**Application of Lee WILSON and Edwin A. Corns.**

**Patent Appeal No. 6862.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

———————

Bosworth, Sessions, Herrstrom & Knowles, Paul S. Sessions, Cleveland, Ohio (Spencer B. Michael, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–10, 12, 13, and 20–22 in application Ser. No. 639,939, filed February 13, 1957, entitled "Method of and Apparatus for Annealing Strip Metal."

Claim 10 sets forth appellants' method comprehensively. We have divided it into its steps and added the bracketed letters. It reads:

"10. The method of annealing strip metal which includes the steps of

"[a] re-coiling an unannealed tightly wound coil of said strip metal into an opened coil by

"[b] interwinding a spacer strand between the successive laps of the strip during said re-coiling whereby

"[c] said laps are positively and substantially uniformly spaced apart by a distance substantially equal to the radial thickness of the spacer strand,[1]

"[d] removing said spacer strand whereby an opened coil is formed having

"[e] completely unimpeded passages between the laps thereof,

"[f] subjecting said opened coil to annealing temperature by forcefully and repeatedly circulating substantially the entire volume of a confined body of heated gas vertically through said unimpeded passages

"[g] for a period sufficient to effect heating of said strip to annealing temperature largely by convection heat transfer from said gas, and

"[h] re-coiling said opened coil back into an annealed tightly wound coil,

"[i] all while maintaining the strip and the axes of the coils in

1. For reasons which will appear, infra, we note that several of the method claims refer to the spacing of the laps in language similar to the following, from claim 2:

" * * * the laps thereof [of the coil] substantially uniformly spaced apart a distance not less than about one-half the thickness of the strip and not more than about three times the thickness of the strip * * *."

which it is wound substantially vertically disposed without inversion at all times during and between the steps set forth."

The principal alleged advantage of the method of the invention resides in the speed with which a coil of strip metal can be annealed.

Claim 21, the only appealed claim to apparatus for annealing strip metal, reads (letters and breakdown added):

"21. In a furnace for annealing opened coils of strip metal,

"[a] an open grid structure supported adjacent the bottom of said furnace and having a coil supporting surface adapted to support an opened coil with its axis substantially vertical,

"[b] wall means for confining a body of atmosphere around said opened coil on said grid structure,

"[c] blower means for circulating said body of atmosphere within said walls,

"[d] baffle plate means for closing the center opening in said opened coil whereby the flow of atmosphere therethrough is blocked,

"[e] and baffle wall means disposed in spaced relation below said coil supporting surface of said open grid structure and substantially coextensive in a horizontal direction with said grid structure,

"[f] said baffle wall means being disposed, with said baffle plate means, to direct substantially the entire volume of said confined body of atmosphere vertically through the passages between the spaced apart laps of said opened coil."

The references relied on are:

| | | |
|---|---|---|
| Webb | 1,938,306 | Dec. 5, 1933 |
| Wilson | 2,169,314 | Aug. 15, 1939 |
| Weisse | 2,224,997 | Dec. 17, 1940 |
| Peterson | 2,409,384 | Oct. 15, 1946 |

It is believed that the claims quoted above convey a sufficient idea of the invention for the purposes of this opinion. We shall first consider and dispose of the rejection of apparatus claim 21, which stands rejected only as unpatentable over Webb.

### The Apparatus Claim

Webb discloses an annealing furnace including structures similar to those recited in sections [a] through [c] of claim 21. Heated air in the Webb device is forced by a blower to rise vertically through a "pipe" disposed concentrically within a "tube" containing vertical heating elements and located in the center opening of the supporting grid structure.

The board, comparing appellants' furnace structure with that of Webb,[2] stated that the use of "a central flue or heating passage [as in Webb] rather

2. Webb discloses alternative methods for circulating his annealing atmosphere. The first, in part, utilizes a blower to force the atmosphere from the "pipe" upwardly, centrally of the furnace, through the "tube." The inner walls of the furnace then force this atmosphere to flow radially *outward* and downwardly through or around the article to be annealed. Upon reaching the bottom of the furnace, the annealing atmosphere may either pass through passages leading to the blower, whereupon it is forced to recirculate to the "tube," or it may enter the "tube" directly by flowing through portals in the bottom periphery of the "tube." Alternatively, if the blower is not used, circulation of the annealing atmosphere is caused solely by heated air rising in the "tube" and cooler, relatively denser air descending and entering the base of the "tube" through the previously noted portals.

In appellants' furnace, by comparison, the annealing atmosphere is circulated by forcing atmosphere from a blower upwardly between an "inner wall member" and an "outer wall" *both* of which *peripherally* surround the coil-receiving area of the furnace. Upon arising between these members to the top of the furnace, appellants' atmosphere flows radially *inwardly* then downwardly between the lapse of the coil or coils to be annealed, and finally back to the blower through ducts formed by the baffle plate and wall means recited in sections [d] and [e] of the claim. Appellants' annealing atmosphere is kept from flowing downwardly into the "center opening in

than an outside flue * * * is merely a matter of design." We find this statement inconclusive of the issue of obviousness of the structure defined by claim 21. It is merely another way of expressing the opinion that the claimed subject matter is obvious. The board was apparently led to its conclusion that appellants' "flue" construction was one merely of "design" because both Webb and appellants provide a flue structure the *end result of which* is, as the board said, that "all the heated gas is forced downwardly through the work receiving [i. e., annealing] chamber." The mere production of the same end result is not determinative of the obviousness of structure and does not support the board's conclusion of unpatentability.

We see in Webb's "central flue" a construction which is fundamentally different from that disclosed by appellants. No prior art of record indicates the use by anyone of an "outside flue" construction in any furnace, let alone an annealing furnace. Under such circumstances, the equivalence of these constructions has not been shown. We are, accordingly, unable to agree that the disclosure of one such flue construction would suggest to one skilled in the art the use of the other.

Also, with respect to limitation [d] of claim 21, the examiner suggested that a "baffle plate" could be placed within the Webb "tube" "surrounding [the] inlet pipe." We are unable, however, to see the pertinence of the examiner's proposed modification of the Webb device inasmuch as it could not possibly block the flow of atmosphere through the Webb

"tube" *when the blower is functioning,* a condition clearly required by claim 21.

Turning to limitation [e], we note that Webb does not disclose a "baffle wall means" which is capable of cooperatively functioning with the "baffle plate means," as set forth in section [f]. The examiner's contention that the bottom wall or base of Webb's furnace corresponds to appellants' "baffle wall means" overlooks the fact that Webb's base is incapable of functioning in the manner required by the claim. It acts as a means which would *block* rather than "direct," as required by claim 21, the downward flow of atmosphere through the annealing furnace if it were not for the "tube" portals and pump return ducts located in or near Webb's base,[3] neither of which is substantially co-extensive with the grid structure as recited in section [e].

■ For the foregoing reasons we reverse the rejection of claim 21 as unpatentable over the disclosure of Webb.

### The Method Claims

■ The Webb patent is relied on by the Patent Office for its showing of an annealing furnace in which appellants' open coils might be heat treated according to the method claims. It is combined with the other references in making the following rejections:

Claims 1–8, 12, 13, and 20 unpatentable over Weisse in view of Webb and Wilson.

Claims 9 and 10 unpatentable over Peterson in view of Webb.

Claim 22 unpatentable over Webb in view of Peterson.

All of the method claims on appeal recite that "substantially the entire

---

said opened coil" by means of the "baffle plate means" (see section [d]) positioned centrally in appellants' device, i. e., in the same relative position in the annealing furnace as are Webb's "pipe" and "tube."

3. See note 2, supra. We see nothing inaccurate in appellants' use of the word "baffle" to indicate a means to "direct" the flow of atmosphere. The American College Dictionary, p. 92 (1961), for example, defines a "baffle" as, inter alia,

"* * * an artificial obstruction for checking or *deflecting* the flow of gases [emphasis ours] * * *." Also, we note that in fact the flow of gases in appellants' furnace is "vertically through the [coil lap] passages" as required by the claim. If it were not for appellants' "baffle wall means" it is clear that such flow would not be possible; it does not appear to us, therefore, that the use of the word "direct" in this regard is entirely inapposite and inaccurate, as alleged by the examiner.

volume" of the annealing atmosphere passes "through" the passages between the coil laps or convolutions (hereinafter referred to as the lap passages).[4] Appellants contend, particularly relying on an expert's affidavit by A. Claire Tucker, that a "substantial" amount of annealing atmosphere would not pass through the lap passages of a sheet metal coil if it were placed in the Webb furnace because the open grid, coil-supporting structure disclosed by Webb terminates a "substantial" distance radially inward of the furnace walls. The examiner, commenting on this disclosure, said:

> "It is readily recognized that some of Webb's circulated atmosphere could pass around a coil placed in Webb's furnace but it is Webb's intent and teaching that most of the circulated atmosphere pass through the material being treated. Webb uses, as an example, coils of wire in which he intends the circulating atmosphere to pass in and out between the strands of the wire to heat the same uniformly * * *."

While, as we have indicated in our discussion of the apparatus claim, there are differences in the structure and operation of the appellants' furnace and the Webb furnace, Webb does disclose a furnace in which an open coil certainly could be placed. If one is to increase the efficiency of heat transfer by using an open coil it seems to us that those skilled in the art would so arrange the open coil in the furnace that the gas stream produced therein would pass through the lap spaces in the coil rather than elsewhere. Considering appellants' discussion of Webb, it would seem that the principal modification required would be to make the supporting rack a shade larger in diameter. We are unable to find a patentable difference between passing

most of the gas through the coil and passing through it "substantially the entire volume" of the gas. The problem being one of heating with hot gas in circulation, it would seem to be obvious to direct the gas toward the material to be heated and not elsewhere.

Appellants allege that none of the references discloses *completely unimpeded* lap passages.[5] Claims 1, 2, 5 and 12 contain no such limitation. Claims 3, 4, 6–10, 13, 20 and 22 alone are affected by this alleged reason for patentability. The two references most pertinent in this regard are Weisse and Peterson.[6]

Weisse discloses the recoiling of a tightly wound strip metal coil into another loosely wound coil having a narrow corrugated strip placed between the laps of the latter coil at each edge of the strip. These steps are said to "cover only the narrow marginal portions of the band which are anyhow cut off and discarded as waste in the subsequent trimming of the band." The purpose of the Weisse strip is "to permit the flow of [annealing] gas and/or liquid into the gaps between the individual convolutions of the roll [i. e., the coil]"; they are not removed by Weisse during the annealing operation.

Peterson discloses another method for preparing a tightly wound sheet metal coil for heat treating which comprises recoiling the original coil into a loosely wound coil having a rope spacer between the coil laps; placing spring members extending radially of the sheet metal coil between the laps of the latter coil from the top; inverting the sheet metal coil with the spring spacer members associated therewith so the springs are on the bottom; and, finally, removing the rope spacer. Except for inserting the springs, this is the spacing method used by appellants. During heat treatment the spring

4. See claim 10, limitation [f], supra.

5. See claim 10, limitation [e], supra.

6. The examiner made a somewhat ambiguous use of the Weisse and Peterson references with reference to "applicants' argument relating to unimpeded passages." While the precise combination of references used by the examiner is not apparent, it is clear that the board affirmed the decision of the examiner on the basis of the *collective* disclosures of the references of record. We shall, accordingly, decide the patentability of the method claims before us by making similar use of the references.

members' coils are retained between the laps of the sheet metal coil so as to permit "the uninterrupted circulation or passage of the heat treating medium to simultaneously and uniformly bring up to the desired or required temperature the entire mass of metal of the coil and thereby result in a completely uniform and standardized product."

With regard to the Weisse and Peterson disclosures, the examiner said:

"It is felt that Weisse's passages are substantially unimpeded. It is recognized that corrugated strips H would add some resistance to the gas flow through the area between the convolutions of strip A but such resistance would not be great enough to substantially impair circulation of the gases. As to the Peterson reference, the passages between the convolutions of the coil and extending from one coil spring support 4 to the adjacent coil spring support are unimpeded. These unimpeded passages extending between the coil spring supports are considered to meet this limitation presented in the claims."

We agree with the examiner that while neither Weisse nor Peterson disclose *completely* unimpeded lap passages, the structures disclosed by these patents very closely approximate this condition. The question then becomes one of determining the patentable significance of appellants' claimed limitation that the coil lap passages be "completely unimpeded."

The board noted in this regard the following passage from appellants' specification:

"It will also be understood that although we have referred to the spacing between the laps of the open coil as uniform, in practice there may be slight variations in spacing, *and even contact between a few laps of a given coil, without substantial effect on the annealing operation* and such variations are intended to be included where the spacing is de-

fined herein as being substantially uniform." [Emphasis ours.]

The board then concluded: " * * * we see no patentable significance in unimpeded passages as specified in these claims (claim 20, for example)." We are unable, as was the board, to see the "patentable significance" of the "completely unimpeded" limitations particularly in view of the statements in appellants' specification that satisfactory annealing can be achieved even in the presence of "contact between a few laps of a given coil." Furthermore, we observe that appellants' supporting rack on which their coil rests has a number of spokes which would impede gas flow as much or more than the coil springs of Peterson. While Peterson also uses a rack, it has fewer spokes by far than appellants' rack.

Appellants also allege that the "specifically defined" lap spacing recited in claims 2, 4, 6, 8 and 20 patentably distinguishes these claims over the references.[7] The essence of appellants' argument is set forth in their brief as follows:

"Thus, because turbulent flow conditions exist in the spaces between the laps when the gap becomes wider than about three times the strip thickness (R. 51), which turbulent flow conditions greatly reduce the heat transfer rate as compared to laminar flow which occurs below three times the strip thickness, it is 'critical' that the space be maintained below about three times strip thickness. If the gap is less than about one-half the strip thickness the maximum available pressure of the circulating atmosphere at the end of the coil will not move sufficient gas through the coil to produce the tremendously improved results that are obtained by the claimed procedure."

As to this limitation also, however, we do not think the record supports its alleged "criticality." At first blush the "criti-

---

7. See note 1, supra.

cal" nature of a "less than about" limitation seems doubtful. Appellants' specification is of no help in this regard when it states:

"The most effective and economical lap spacing varies *to a degree* with the thickness and width of the strip of the coil being treated. Thus, for a given strip width, with relatively thin strip (for example from .008″ to .02″ [sic] in thickness) the width of the space or passage between the laps *may* be less, relative to the strip thickness, than with coils of relatively thick strip (such as .006″ to .015″). The width of the strip of the coil also has *an influence* on the most desirable space between laps of the opened coil and, *generally speaking*, the wider the strip the greater should be the spacing between laps." [Emphasis ours.]

Both the Patent Office and appellants have engaged in what appears to us to be a somewhat futile attempt to measure the thickness of the Weisse coil strip and the Weisse lap spacing in their respective attempts to show whether the particular lap spacing recitations included in the claims now before us are or are not distinguishable from those disclosed by Weisse. Appellants, for example, conclude, in typically precise fashion, that the Weisse lap spacing is "about 30% to 60% greater than applicants' top spacing." Patent drawings are not working drawings and this argument is predicated, moreover, on a greatly enlarged section of a small drawing obviously never intended to show the dimensions of anything. We do not find it persuasive.

Appellants have alleged "tremendously improved" and "extraordinary results" to be attributable to the particular lap spacing recited. We find no statement in the record which even alleges results improved in any degree over the results obtainable by annealing a sheet metal coil *configured in the form disclosed by either Weisse or Peterson.* The "tremendously improved results" alleged by appellants exist only on comparison of their method with results achieved by the prior art method of annealing *tightly wound* coils. But the prior art relied on here discloses open or spaced coils. Accordingly, we find appellants' recited lap spacing not critical because (1) in view of the vague terminology used in the claims the disclosure of Weisse, for example, is sufficiently suggestive of the *claimed* lap spacing, and (2) the alleged improved results have not been shown with reference to either the Weisse or Peterson disclosures. The open coils of these references would have the same rapid heat transfer advantages possessed by appellants' open coils.

One final point remains to be discussed —It relates to the "substantially vertically disposed" limitation [i] of claim 10 which appears in various forms in method claims 2 through 10, 12, and 13.[8] We find appellants' arguments concerning this limitation related to their previously discussed "completely unimpeded" limitation. Appellants, referring to their "non-inversion step" as they call limitation [i], state that this limitation is "essential" in their method. Further, they state:

" * * * that applicants' vertical axis non-inversion step is neither disclosed nor suggested in any of the patents relied upon, and further that *there would be no reason for this step* in the procedures contemplated by these patents. In applicants' method, however, * * * a coil is being handled having *completely unimpeded passages* between the laps of the coil, the step of maintaining the coil axis vertical with-

8. In view of appellants' repeated use of the conjunctive in claims 2–10, 12 and 13 (e. g., "during and between the steps set forth"), we are forced to conclude that their use of the disjunctive in claims 1, 20 and 22 (e. g., "during or between the steps set forth") was intended to broaden the scope of the latter claims. Accordingly, we have not considered appellants' arguments relative to limitation [i] applicable to the latter claims.

out inversion during and between the several other steps of the process enables a large, loose, unstable, completely unimpeded and unreinforced spiral strip of steel to be maintained in position against harmful displacement of the spaced apart laps relative to each other." [Emphasis ours.]

The fact is, however, that, for reasons already discussed, we do not find any reason for holding that the passages between the laps of appellants' coil or coils are necessarily any more "completely unimpeded" than those disclosed by either Weisse or Peterson. Using appellants' own reasoning, we see "no reason for this step" in their contemplated procedure. As the examiner indicated, the claims present no steps that would make it necessary to invert the coils. We cannot agree with appellants, therefore, that limitation [i] is "essential" to their disclosed invention; it cannot, therefore, serve patentably to distinguish their invention from the references.

For the above reasons we reverse the Patent Office rejection of apparatus claim 21 and affirm its rejection of method claims 1–10, 12, 13, 20 and 22.

Modified.