56 CCPA
**Application of Anwar K. CHITAYAT.**
**Patent Appeal No. 8125.**

United States Court of Customs and Patent Appeals.

April 3, 1969.

John C. Vassil, New York City (Thomas P. Dowling, New York City, of counsel) for appellant.

Joseph Schimmel, Washington, D. C., (Jere W. Sears, Washington, D. C., of

counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the rejection of all the claims of appellant's application [1] under 35 U.S.C. § 103.

## THE INVENTION

Appellant's invention relates to the field of fiber optics wherein optical images are transmitted along flexible bundles of light-transmitting fibers. Appellant acknowledges that it has previously been known to impart a cyclic displacement of the image relative to the fibers to ensure that all parts of the image are presented at one time or another to intact fibers for transmission along the bundle, thus avoiding degradation of the received image due to elements of the image being lost in the spaces between adjacent fibers or along broken fibers. Appellant's invention resides in providing a displacement of the image which amounts to at least one hundred fiber diameters to cause an alleged improvement in the quality of the transmitted image.

Claim 7, which is reproduced as follows, is typical of the claims on appeal, and the patentability of it is determinative of all issues in this appeal.

7. A coherent image transmitting system comprising an optical fibre bundle having physically separate variably oriented ends and transmission improving means for improving the effective resolution of the transmitted image and eliminating the effect of broken fibres independent of the relative orientation of said ends comprising image displacing means at each of said ends for imparting a displacement of the respective image, said displacing means being configured whereby the driving thereof causes elements of said image to be displaced by at least one hundred fibre diameters for eliminating the effect of defective fibers without causing excessive transmission losses, and control means for synchronizing the operation of said displacing means with respect to both speed and phase relationship whereby said image displacements are effectively nullified, said control means comprising a plurality of separate drive means, one couple to each of the image displacing means at said fibre bundle ends for cyclically driving said displacing means, means for synchronizing the speed of each of said drive means and means for fixing the phase of each of said drive means.

## THE REFERENCES

Frank [2] discloses a fiber-optic, light transmitting system which, in its Figure 4 embodiment, includes generally the same structural features for displacing the image relative to the fibers as appellant employs. Frank's specification does not, however, give numerical values for the image displacement in terms of multiples of fiber diameters or the equivalent.

Kapany [3] shows another fiber optic system of the same general type as Frank involving image displacement, and refers explicitly to the magnitude of displacement, stating:

By experimentation, it has been found that an amplitude of four or five fiber diameters resulted in considerable gain in resolution for the transmission of images, amplitudes greater than four diameters had no appreciable increase in resolution, and amplitudes of less than four resulted in

---

1. Serial No. 266,730, filed March 20, 1963, for "Image Enhancement Means," allegedly a continuation-in-part of serial No. 116,-179, filed June 9, 1961.

2. U.S. Patent No. 3,110,762, issued November 12, 1963.

3. U.S. Patent No. 3,016,785, issued January 16, 1962.

a proportionate lessening of the resolution which could be measured. * * *

Kapany illustrates the effect of his range of image displacement on quality by the following figures:

FIG. 5

FIG. 7

FIG. 9

Figure 5 shows a target image to be transmitted, Figure 7 shows the same image as received without image displacement and Figure 9 shows the received image with image displacement in the range taught by Kapany.

Jones [4] and Fayerweather [5] both show the use of circuit-controlled separate synchronous motors which operate two rotating optical elements in both speed and phase synchronism. Figure 1 of the Jones patent shows two motion picture projectors driven by synchros 29 and 30 with a phase control at 32. Fayerweather discloses two rotating shutters driven by synchronous motors which are connected to a common alternating current source.

## THE REJECTION

Claims 7–10 are rejected under 35 U.S.C. § 103 as unpatentable over Frank with Kapany. The examiner contended that Frank disclosed the broad combination claimed by appellant and that:

[I]t is obvious that one skilled in the art could provide a displacement of 100 [sic] at least 100 fiber diameters in the Frank device without producing any unexpected results. * * *

In an additional rejection of claims 9 and 10 under 35 U.S.C. 103 on Frank and Kapany (as applied above) further in view of either Jones or Fayerweather, the examiner stated:

[I]t is considered that it would be obvious to use synchronous motors such as shown in either Fayerweather or Jones to drive the image shifters in the Frank device since the results would be entirely expected.

Affirming the examiner, the board stated:

In addition, it seems to us that a person ordinarily skilled in the art would examine a cable to ascertain the quality thereof. If a bundle of thirty-six fibers were found to be broken, as in appellant's exhibit, it would be obvious that merely displacing the image by four fiber diameters would not effect any improvement. Thus, it is obvious, statistically, that the image displacement should considerably exceed the size of the break. This being so, we find nothing critical and unobvious in the use of one hundred fiber diameters.

## OPINION

On appeal, the solicitor refers to measurements made by him from the drawings of Frank of the relative dimensions of the fibers and image displacement, and then by process of arithmetic deduces that Frank shows a relative image displacement of 45 fiber diameters. Thereafter the solicitor argues:

There is of record no evidence that a nutation circle circumference of 100 fibre diameters will produce a resolution differing more than in degree from the resolution produced by a nu-

4. U.S. Patent No. 2,843,005, issued July 15, 1958.

5. U.S. Patent No. 2,166,947, issued July 25, 1939.

tation circle circumference of 45 fibre diameters.

Appellant in refutation of the solicitor's argument, finds the relative dimensions from the drawings to be different with a corresponding reduction in the relative displacement value.

In view of the absence in Frank's specification of any written description of the quantitative value of the image displacement relative to fiber diameter, the arguments based on mere measurement of the drawings appear to us of little value. As we said when faced with an analogous situation in In re Wilson et al., 312 F.2d 449, 50 CCPA 827:

> Both the Patent Office and appellants have engaged in what appears to us to be a somewhat futile attempt to measure the thickness of the Weisse coil strip and the Weisse lap spacing in their respective attempts to show whether the particular lap spacing recitations included in the claims now before us are or are not distinguishable from those disclosed by Weisse. Appellants, for example, conclude, in typically precise fashion, that the Weisse lap spacing is "about 30% to 60% greater than applicants' top spacing." Patent drawings are not working drawings and this argument is predicated, moreover, on a greatly enlarged section of a small drawing obviously never intended to show the dimensions of anything. We do not find it persuasive.

Thus, in the absence of explicit numerical teaching in Frank relating image displacement to fiber diameter, we turn to the Kapany patent to see whether the values there stated would make the values used by appellant obvious. On this point appellant draws particular attention to the latter part of the previously quoted portion of Kapany that " * * * amplitudes greater than four diameters had no appreciable increase in resolution * * *." This statement, appellant argues, is a teaching away from use of displacements in excess of four diameters which would make it unobvious to operate at appellant's claimed displacement of at least one hundred fiber diameters.

However, the examiner in his Answer, takes the position that Kapany does not affirmatively teach a *decline* in quality above four diameters but merely infers that a law of diminishing returns may operate after the initial improvement, if displacement is thereafter progressively increased.[6]

This position of the examiner seems to be supported by consideration of the previously reproduced Figures 5, 7 and 9 of Kapany which make it clear that the problem of improving image quality is solved in major part just by moving from a static condition to even the initial, relatively low, amplitude of displacement disclosed by Kapany. Adopting therefore the examiner's position that Kapany does not affirmatively teach away from amplitudes greater than four, it appears that appellant's range of one hundred fiber diameters is a change in degree from the Kapany range.

A review of the record here, however, fails to reveal any results that would not be expected in view of the Kapany teachings. The record includes two exhibits, A and B, showing images of a page of a tool catalog received along the same damaged fiber optic cable under conditions of *no* image displacement and of displacement of "about 200 diameters." Al-

---

6. For example, the examiner's Answer states:

> Kapany merely states that there is no material improvement in the image when the displacement goes beyond four or five fiber diameters. Statistically the Kapany teaching is correct because if there is one broken fiber in a group of four an elemental image area the size of the fiber end would be transmitted approximately 75% of the time. At a displacement of five fiber diameters such area would be transmitted approximately 80% of the time. In other words the improvement is rapid (0 to 75%) up to a displacement of four fiber diameters, but beyond four diameters the improvement tapers off rapidly.

though the improvement in picture quality is quite dramatic, the exhibits are less than convincing because of a failure to provide a comparison with the prior art. First, the comparison is with no displacement at all, and a major part of the improvement may be the result of having at least some lower degree of displacement as taught by Kapany. Second, the improved image of the second exhibit was obtained at twice the claimed lower limit of one hundred diameters. The record thus fails to show any unexpected improvement in image quality over that which would be expected in view of the cited references at a minimum displacement of one hundred fiber diameters.

From the foregoing, we believe the rejection of the claims under 35 U.S.C. § 103 as being obvious in view of the cited prior art was correct, and the decision of the board is therefore affirmed.

Affirmed.