I concur in result and join the opinion except in the following respect. In my view, a portion of appellant's advertising business "is carried on ... by the organization primarily for the convenience of its members." In particular, the advertisements for positions in the field and for services and publications directed to members in their professional capacity, including the advertisement for *Medical Eco-*

*nomics* magazine, would fall under this exemption.

**In re The Successor In Interest To Walter ANDERSEN.**

**Appeal No. 83–1024.**

United States Court of Appeals, Federal Circuit.

Sept. 17, 1984.

---

Robert E. Wagner, Chicago, Ill., argued, for appellant. With him on the brief were Leo J. Aubel and Alan L. Barry, Chicago, Ill.

Thomas E. Lynch, Washington, D.C., argued, for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Jere W. Sears, Deputy Sol., Washington, D.C.

Before SMITH and NIES, Circuit Judges, and WISDOM,[*] Senior Circuit Judge.

PER CURIAM.

This appeal arises from a decision of the United States Patent and Trademark Office (PTO) Board of Appeals (Board). Acting in the context of a reexamination proceeding conducted under 35 U.S.C. §§ 301–307 (1982), an examiner from the PTO rejected all claims of a patent owned by the appellant (Andersen patent)[1]. The basis for this ruling was that the claimed invention would have been obvious in view of a previous patent, known as the Winder patent.[2] See generally 35 U.S.C. § 103. The Board affirmed the examiner's ruling, and this appeal ensued. We affirm.

I.

The Andersen patent concerns an improved method for manufacturing parisons—partially shaped or molded glass bottles. The general method for manufacturing parisons starts with a mass of molten glass known as a "gob". The gob is dropped into a mold form and is forced to the bottom of the mold, which corresponds to the neck of the bottle. A plunger sweeps upward from below the bottom of the mold and thrusts itself into the gob residing at the bottom of the mold. The plunger retracts and, in what is known as the counterblow step, air is blown into the orifice the plunger has created. This rush of air causes the gob to assume the shape of the mold.

Under the prior art, parison-manufacturing machines combined the force of gravity with air pressure exerted from the top of the mold to push down the gob to the bottom of the mold.[3] The Andersen patent describes a method by which a vacuum drawn from the bottom of the mold pulls the gob to the bottom. The vacuum causes the hottest, most fluid portion of the gob to be pulled into the neck ring of the mold and consequently produces a more even distribution of glass around the mold. The method also enables the machine to operate more quickly.

Appellant, the estate of Virginia Kremm, owns the Andersen patent. In April 1979, Virginia Kremm brought suit against the Thatcher Glass Manufacturing Co., alleging that the defendant was infringing the Andersen patent. That suit is still pending before the United States District Court for the Northern District of Illinois.[4] At some point during the course of that litigation, the defendant submitted to the Patent and Trademark Office a request for reexamination of the Andersen patent. The PTO granted the request and, on reexamination, an examiner found Andersen obvious in view of Winder. The examiner rejected all four claims of the Andersen patent. After hearing oral argument on the issue, the PTO Board of Appeals affirmed the examiner's decision. This appeal followed.

II.

The appellant attacks the decision of the Patent Office on several fronts. The appel-

---

[*] The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

[1.] U.S. Patent No. 3,171,729, issued Mar. 2, 1965.

[2.] U.S. Patent No. 2,811,814, issued Nov. 5, 1957.

[3.] The technical, scientific name for this method is the "blow and blow" method.

[4.] Kremm v. Thatcher Glass Mfg. Co., No. 79C–1313 (N.D.Ill. filed Apr. 3, 1979).

lant contends that the Board erred (1) in rejecting all four claims of Andersen based on an analysis of only the first claim, (2) in refusing to apply the "rule of doubt" to uphold the patentability of Andersen, and (3) in affirming the examiner's holding that Andersen would have been obvious in view of Winder. We reject each of these contentions.

■ First, there is no merit to the appellant's argument that the Board summarily rejected Andersen's four claims based on a cursory review of Claim 1. The Board's opinion shows that the Board considered all four claims of Andersen; the opinion reproduced Claim 1 for illustrative purposes only. The failure of the opinion to reproduce the other claims or to discuss the claims separately does not undermine the Board's assertion that it reviewed all four claims.

Second, appellant argues that all doubts with respect to patentability of its claims must be resolved in its favor under either (1) a purported judicially recognized "rule of doubt" or (2) as part of the statutory presumption of validity. 35 U.S.C. § 282.

■ Contrary to appellant's view, the premise that doubts as to patentability should be resolved in favor of a patent applicant is now defunct. See In re Nabor, 503 F.2d 1059, 1059–1060; 183 USPQ 245, 246 (CCPA 1974). While the solicitor does not dispute that the patent claims in issue enjoy the statutory presumption of validity, we agree with the solicitor that the presumption does not embrace the rule of doubt. Indeed, if patents were issued based on resolving doubts in an applicant's favor, the presumption of validity would lose its legitimacy.

The operation of the presumption of validity has been analyzed in numerous opinions of this court wherein we have held that, in the face of a challenge to validity based on prior art not previously considered by the PTO, the presumption remains but may be more easily overcome.[5] While we agree with appellant that reexamination should not be allowed to be used as a tool to circumvent the burden of proof placed on an alleged infringer during litigation, we see no danger in this case of that having happened. The rejection is based on art not previously considered by the office which, as indicated, may make the presumption easier to overcome.

■ With respect to the Board's conclusion of obviousness, we must review that conclusion in the context of a reexamination proceeding, as we do in all other types of appeals, for correctness or error as a matter of law. Any underlying fact findings made by the Board are reviewed under the clearly erroneous standard. See generally, In re de Blauwe, 736 F.2d 699, 703, 222 USPQ 191, 195 (Fed.Cir.1984).

■ Reaching the merits, we agree with the Board's affirmance under 35 U.S.C. § 103.[6] The appellant argues that there is one "critical" distinction between the Andersen method and the teachings of Winder: According to the appellant, Winder describes a process in which the plunger is already at the up position when the gob slides into the mold and the vacuum is activated; under Andersen, the plunger is in the down position when the gob slides into the mold and the vacuum is applied. The appellant argues that Andersen's timing sequence allows ambient air to flow around and to cool the plunger, producing

**5.** *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.1984); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 220 USPQ 97 (Fed.Cir.1983); *Hughes Aircraft Company v. United States,* 717 F.2d 1351, 219 USPQ 473 (Fed.Cir.1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 218 USPQ 185 (Fed.Cir.1983); and *SSIH Equipment S.A. v. United States International Trade Commission,* 718 F.2d 365, 218 USPQ 678 (Fed.Cir.1983).

**6.** 35 U.S.C. § 103 provides:
A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

higher-quality parisons at faster rates than is possible under Winder.

The PTO examiner and the Board of Appeals interpreted Winder differently. They found that what occurs under Winder is that, *as* the gob is fed into the mold, the plunger *begins* its upward movement and *at the same time* the vacuum is turned on. The detailed specification [7] and mechanical drawings [8] of the Winder patent support the Board's interpretation. The Board correctly concluded that the "critical" distinction asserted by the appellant is really no distinction at all, but is disclosed in Winder.

The only support for the appellant's position is found in one of the drawings in Winder [9]. The appellant argues that a certain label on the drawing belies the Board's interpretation of Winder's timing sequence or, at least, renders Winder ambiguous as to its timing. We reject this argument. The referenced drawing is merely a simplified schematic intended to provide a summary overview of Winder's timing sequence. The timing ambiguity in this *simplified* drawing does not outweigh the consistent and unambiguous *detailed* teachings of the specification and mechanical drawings of the Winder patent. *See In re Chitayat,* 408 F.2d 475, 478, 56 CCPA 1343, 161 USPQ 224, 226 (1969) "[p]atent drawings are not working drawings", quoting *In re Wilson,* 312 F.2d 449, 454, 50 CCPA 773, 136 USPQ 188, 192 (1963). We affirm the holding of the Board that Andersen would have been obvious in view of Winder.

### III.

The Board of Appeals correctly found that Andersen would have been obvious in view of Winder. The Board did not err by refusing to apply any "rule of doubt" in favor of Andersen. We, therefore, *affirm* the decision of the Board of Appeals.

AFFIRMED.

7. *See* U.S. Patent No. 2,811,814 (Winder), cols. 34, 39–40, 50–51.

8. *Id.* Figures 33, 41.