**In re Berwyn E. ETTER, Appellant.**

**No. 84–1213.**

United States Court of Appeals, Federal Circuit.

Feb. 27, 1985.

Nies, Circuit Judge, concurred with opinion in which Smith and Bissell, Circuit Judges, joined.

Donald H. Zarley (argued), Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, for appellant. With him on brief was Mark D. Hansing, Des Moines.

Thomas E. Lynch (argued), Associate Sol., U.S. Patent & Trademark Office, Washington, D.C., for appellee. With him on brief were Joseph F. Nakamura, Sol. and Jere W. Sears, Deputy Sol., Washington, D.C.

Martin Fleit (argued), Fleit, Jacobson, Cohn & Price, Washington, D.C., for intervenor. With him on brief was Allen S. Melser, Washington, D.C.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, DAVIS, BALDWIN, KASHIWA, BENNETT, MILLER, SMITH, NIES, NEWMAN, and BISSELL, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a decision of the Board of Appeals (board) of the United States Patent and Trademark Office (PTO) affirming the examiner's final rejection in a reexamination proceeding of claims 1 through 9, all of the claims of United States Patent No. 4,133,034 (the '034 patent), issued January 2, 1979 to Berwyn E. Etter, as nonpatentable under 35 U.S.C. § 103 in view of prior art. We *affirm*.

## Background

The '034 patent concerns a method and device for assimilating utility meter data at meter locations. Anthony Goodfellow, who had applied for and been refused a license under the '034 patent, filed a patent application on a utility meter reading device, copying the claims of the '034 patent to provoke an interference.[1] The examiner refused to institute an interference because he found Goodfellow's claims unpatentable in view of U.S. Patent No. 3,932,730 (Ambrosio), U.S. Patent No. 4,016,542 (Azure), and U.S. Patent No. 4,115,870 (Lowell). On February 4, 1982, Goodfellow requested reexamination of the '034 patent, citing that prior art. That request was granted, and, on August 13, 1982 the examiner, having completed an ex parte examination, declared all claims of the '034 patent nonpatentable. Etter asserts that all of the claims stand or fall together.

Claim 1 is representative:

A method of assimilating utility meter data at the meter locations, comprising,

accumulating on an input information electronic storage means customer profile information for a plurality of meter customers, said profile information including the customer identity and account information,

placing said input information electronic storage means in a portable computer capable of being manually carried to the site of a given meter, said portable computer having an output information storage means and having the capability of updating, printing and presenting various of said customer profile information for said meter customers before and after receiving current customer profile information,

actuating said computer to segregate and to visually present from the customer profile information for a plurality of meter customers stored on said input information electronic storage means at least the meter number and customer identity information of a given meter customer,

imposing into said computer the current meter reading of said given meter customer at the site of the meter being read,

actuating said computer to calculate the charge for utility usage based upon the previous meter reading and said current meter reading,

actuating said computer to print a bill for said meter customer at the site of said meter based upon said calculation and imposing on said output information storage means the updated customer profile information,

and depositing said bill at the service address of said given meter customer.

## The Examiner's Rejection on Reexamination

The examiner held that the subject matter of the '034 claims would have been obvious in view of Ambrosio, which discloses the use of cards as input information storage means, and Lowell, which teaches use of random access memory (RAM) as an input information electronic storage means for storing customer information (identity, account information, etc.) for a plurality of customers, or alternatively, in view of Ambrosio and Azure, which teaches use of a solid state memory as an input information electronic storage means for storing cus-

---

1. The '034 patent is involved in a civil action filed against a third party (M.D.Fla., Civil Action No. 81–1009. Cir. T–H). That action has been stayed, and an interference involving Etter and that party has been dissolved, in light of the examiner's determination that the claims are unpatentable. Thus the outcome here could affect a civil action and two interferences.

tomer information for a plurality of customers.

Finding that the environment of use for the devices of Ambrosio, Azure, Lowell, and the '034 patent (viz. on-site utility meter reading) was the same, and that Azure and Lowell discuss their inventions as being improvements over systems of the Ambrosio type, the examiner concluded that it would have been obvious to employ the memory system of either Azure or Lowell (i.e., solid state devices such as RAMs or ROMs) in place of the input information storage device taught by Ambrosio (i.e., billing cards). In effect, the rejection rested on the view that the teachings of Ambrosio and Azure or of Ambrosio and Lowell would have made the claimed inventions of the '034 patent obvious.

The examiner accepted Etter's contention that the '034 patent enjoyed a statutory presumption of validity, 35 U.S.C. § 282, during reexamination, but viewed the presumption as having been overcome. Further, he said the presumption had been weakened by prior art (Azure and Lowell) not earlier cited to nor considered by the PTO.

Azure and Lowell were considered by the examiner as not "merely cumulative" of the prior art cited during the original prosecution, but were clearly more pertinent because they taught use of input information electronic storage means to store customer meter information for a plurality of utility customers.

### The Board's Opinion

On appeal to the board, as before this court, Etter urged three grounds for reversal: (1) that the presumption of validity attaches in reexamination proceedings, and the examiner failed to carry the heavier burden thus imposed; (2) that Azure was obsolete technology, and thus constituted

less pertinent art than that cited to the examiner during prosecution;[2] and (3) that affidavits of Ambrosio and Gray showed that the invention of the '034 patent would not have been obvious.

Respecting the presumption of validity, the board noted numerous reasons for holding that it did not attach to claims undergoing reexamination. Saying that the burden of showing nonpatentability is the same on the examiner in any examination, and the board did not see how that burden would be increased in a reexamination proceeding. It further held that the evidence was such as to require affirmance of the rejection because it would sustain the examiner's burden, regardless of whether the presumption was or was not applied.

Concerning Azure, the board agreed with the examiner that it was more pertinent than the art considered during the initial prosecution, and concluded that "the collective teachings of Ambrosio and Azure would have provided a much stronger suggestion for combining the teachings to provide the subject matter" of the invention than would the teachings of the earlier cited art.

The board considered the Ambrosio and Gray affidavits unpersuasive because they showed "a total lack of appreciation of the legal concept of obviousness."[3]

### Issues

(1) Must the presumption of validity, 35 U.S.C. § 282, be applied to claims involved in reexamination proceedings?

(2) Did the board err in affirming the examiner's rejection?

### OPINION

#### (A) Presumption of Validity

■ Etter's basic contention—that § 282 must be applied in reexamination proceed-

2. Etter filed a Rule 131 affidavit of prior inventorship in respect of Lowell. The examiner withdrew Lowell, but held that Ambrosio in view of Azure remained sufficient to support rejection of all claims. Etter asserts that the issue on appeal is whether the claimed inventions would have been obvious under 35 U.S.C. 103 on Ambrosio in view of Azure.

3. As intervenor, Goodfellow filed a brief on this appeal, arguing strenuously for non-application of a presumption of validity to claims undergoing examination and reexamination. His brief also supported the board's view of the prior art and the affidavits.

ings—misconstrues the purposes for which that statute and the reexamination statutes were enacted. Review of the statutes, legislative history, regulations, and case law compels the view that § 282 is not applicable to claims about which "a substantial new question of patentability," 35 U.S.C. § 305, is under consideration in a reexamination proceeding. Though the board decision here would be correct in any event, we discuss the issue because of its foundational relationship to Etter's appeal and the need for clarification of guidance offered the board and bar.

Though the board and intervenor stated strong bases for denying applicability of the presumption in reexamination proceedings, the board did recognize that it must in any event show a basis for its rejection of claims in any type of examination. Apparently for that reason, the solicitor indicated a willingness to accept applicability of § 282 in reexamination proceedings. It is true that the question has "tempest in a teapot" overtones, for the PTO will reject or cancel claims it considers unpatentable, as is its duty, whether § 282 is or is not considered applicable. The need for clarity in the law and for avoidance of unnecessary disputes, however, has prompted this court to consider the question *in banc.*

Section 282 provides that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party *asserting such invalidity.*" (Emphasis added.). As this court noted in *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 218 USPQ 718 (Fed.Cir.1983):

> The presumption, like all legal presumptions, is a procedural device, not substantive law. It does require the decisionmaker to employ a decisional approach that starts with the acceptance of the patent claims as valid and that looks to *the challenger* for proof of the contrary. Thus *the party asserting invalidity* not only has the procedural burden of proceeding first and establishing a prima-facie case, but the burden of persuasion on the merits remains with that

party until final decision.... With all evidence in, *the trial court* must determine whether the party on which the statute imposes the burden of persuasion has carried that burden. [Emphasis added.]

713 F.2d at 1534, 218 USPQ at 875.

■ The foregoing description in *Stratoflex* coincides with the inclusion of § 282 in Chapter 29 of title 35, entitled "Remedies for Infringement of Patent, and Other Actions". Both recognize that the presumption is operative to govern procedure in *litigation* involving validity of an *issued* patent. A statute setting rules of procedure and assigning burdens to litigants in a court trial does not automatically become applicable to proceedings before the PTO. Nor can it acquire an independent evidentiary role in any proceeding.

As said in the legislative history of Chapter 30 of title 35 ("Prior Art Citations to Office and Reexamination of Patents"), reexamination "will permit any party to petition the patent office to review the efficacy of a patent, following its issuance, on the basis of new information about pre-existing technology which may have *escaped review at the time of the initial examination* of the application." House Report No. 66–1307, 96th Cong., 2d Sess. (1980), 3–4, *reprinted in* 1980 U.S.Code Cong. & Ad.News 6460, 6462 (emphasis added). Reexamination is thus neutral, the patentee and the public having an equal interest in the issuance and maintenance of valid patents.

The statute, 35 U.S.C. § 305, provides that "reexamination will be conducted according to the procedures established for initial examination under the provisions of sections 132 and 133 of this title." The actual reexamination is conducted *ex parte.* 37 CFR 1.550(a) (1983). Patent claims are reexamined only in light of patents or printed publications under 35 U.S.C. §§ 102, 103, and only new or amended claims are also examined under 35 U.S.C. §§ 112 and 132. 37 CFR 1.552; MPEP

§ 2258.[4] The focus of the limited proceedings under Chapter 30 thus returns essentially to that present in an initial examination, i.e., to a time at which no presumption of validity had been created.

■■■ The innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought "doubtful." House Report at 3. When the patent is concurrently involved in litigation, an auxiliary function is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration. In a very real sense, the intent underlying reexamination is to "start over" in the PTO with respect to the limited examination areas involved, and to *re*examine the claims, and to *examine* new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding. That intent is reflected in 35 U.S.C. § 303, which requires the Commissioner to determine whether "a substantial new question of patentability" has been raised, and in 35 U.S.C. § 304, which provides for initiation of reexamination by the Commissioner *sua sponte*.

The intent that reexamination proceedings and court actions involving challenges to validity be distinct and independent is reflected in the legislative history of § 303, which notes that denial of a request for reexamination does not deprive the requestor (if not the patent owner) "of any legal right" to contest validity in subsequent court proceedings. House Report at 6466. That "legal right" may be exercised as a matter of right, but determination of whether a "substantial new question of patentability" exists, and therefore whether reexamination may be had, is discretionary with the Commissioner, and, as § 303 provides, that determination is final, i.e., not subject to appeal.[5]

That a patentee may request reexamination, and has the opportunity in the PTO of distinguishing art newly cited by the examiner, 37 CFR 1.530(c), and may amend his claims under reexamination, 35 U.S.C. § 305, further distinguish reexamination from litigation. It is of no moment that the examiner's burden of showing a basis for rejection in the examination and reexamination processes is not described in the "clear and convincing" terms applicable under § 282 to a litigant challenging validity of an issued patent. During the examination processes, allowances of claims raise no presumption and may be withdrawn. That one challenging validity in court bears the burden assigned by § 282, that the same party may request reexamination upon submission of art not previously cited, and that, if that art raises a substantial new question of patentability, the PTO may during reexamination consider the same and new and amended claims in light of that art free of any presumption, are concepts not in conflict. On the contrary, those concepts are but further indication that litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes. In the former, a litigant who is attacking the validity of a patent bears the burden set forth in § 282. In the latter, an examiner is not

4. If a patent owner requests reexamination, but desires consideration of wider issues, e.g., prior public use or sale, he must obtain such consideration by filing a reissue application. 37 CFR 1.552; MPEP §§ 2212, 2258. The present case involves a non-patentee requestor; it should be remembered, however, that reexamination may be a boon to patentees whose patents may be thereby strengthened, and that the actual reexamination procedure itself should be the same whoever be the requestor.

5. The inquiry occasioned by a request for reexamination is solely whether a reexamination or-

der should issue and is not directed toward resolution of validity. The requestor's burden is simply to show a basis for issuance of the order, a burden unrelated to that assigned in § 282. A refusal of reexamination leaves untouched the § 282 presumption to which the patent is entitled in the courtroom. Similarly, a reexamination may involve only certain claims, e.g., those in litigation, and the newly cited prior art may bear no relation to other claims, to which the presumption of validity would remain attached in future litigation involving those claims.

attacking the validity of a patent, but is conducting a subjective examination of claims in the light of prior art.

In *In re Yamamoto*, 740 F.2d 1569, 222 USPQ 934 (Fed.Cir.1984), this court said that claims subject to reexamination will "be given their broadest reasonable interpretation consistent with the specification, and limitations appearing in the specification are not to be read into the claims." 740 F.2d at 1571, 222 USPQ at 936. That standard is applied in considering rejections entered in the course of prosecution of original applications for patent. *See In re Prater*, 415 F.2d 1393, 1404–05, 162 USPQ 541, 550–51 (CCPA 1969). As noted in *Yamamoto:*

> [a]n applicant's ability to amend his claims to avoid cited prior art distinguishes proceedings before the PTO from proceedings in federal district courts on issued patents. When an application is pending in the PTO, the applicant has the ability to correct errors in claim language and adjust the scope of claim protection as needed. This opportunity is not available in an infringement action in district court....
> The same policies warranting the PTO's approach to claim interpretation when an original application is involved have been held applicable to reissue proceedings because the reissue provision, 35 U.S.C. § 251, permits amendment of the claims to avoid prior art. [Citation omitted.] The reexamination law ... gives patent owners the same right ...

740 F.2d at 1572, 222 USPQ at 936.

■■■ Claims in a reissue application enjoy no presumption of validity. *In re Sneed*, 710 F.2d 1544, 1550 n. 4, 218 USPQ 385, 389 n. 4 (Fed.Cir.1983). Though reissue and reexamination proceedings are distinct, the focus of both is on curing defects which occurred during a proceeding in the PTO, which was responsible for original issuance of the patent.

Etter cites language in *In re Andersen*, 743 F.2d 1578, 223 USPQ 378 (Fed.Cir. 1984), as appearing to require application of § 282 in reexamination proceedings. At oral argument, the PTO solicitor indicated that *Andersen* has been understood by and accepted in the PTO as establishing that requirement.

The court in *Andersen* dealt with Andersen's argument that any doubt must be resolved in his favor under (1) a judicially imposed "rule of doubt," or (2) as "part of the presumption of validity." The court rejected (1), citing *In re Naber*, 503 F.2d 1059, 183 USPQ 245 (CCPA 1974), and rejected (2), noting that the presumption does not embrace a rule of doubt. The court agreed with Andersen's statement that reexamination should not circumvent the burden "placed on an infringer during litigation." As above indicated, that is a truism, the litigation and reexamination processes being distinct. The court's discussion of the workings of the presumption in the face of new art, and the cases cited, all related to operation of the presumption in litigation.

Nonetheless, recognizing that *Andersen* may be and has been read as holding that claims must be presumed valid under § 282 in reexamination proceedings, the court has *sua sponte* taken this case *in banc* to clarify the law as set forth in this opinion.

No statutory language and no legislative history indicates any support for a requirement that the provisions of 35 U.S.C. § 282 must be applied in the consideration of claims involved in reexamination proceedings. Indeed, all available indications are to the contrary. We hold, therefore, that § 282 has no application in reexamination proceedings.

It is at best incongruous to apply a trial court procedural rule to the examination of claims in the PTO. Moreover, because this court and one of its predecessors has consistently held that the PTO examiner has the burden of showing a basis under the statute, 35 U.S.C., for each rejection, injection of the presumption into the examination process could add nothing but legalistic confusion.

■■■ This court has repeatedly pointed out that the § 282 presumption is a rule of

procedure placing the burden of persuasion on him who attacks a patent's validity. There is no such attacker in a reexamination, and hence no one on whom that burden may be placed.[6] In litigation, where a patentee cannot amend his claims, or add new claims, the presumption, and the rule of claim construction (claims shall be construed to save them if possible), have important roles to play. In reexamination, where claims can be amended and new claims added, and where no litigating adversary is present, those roles and their rationale simply vanish.

■ The patent right is a right to exclude. The statute, 35 U.S.C. § 261, says that "patents shall have the attributes of personal property."[7] The essence of all property is the right to exclude, and the patent property right is certainly not inconsequential. It is, nonetheless, created by a grant from the government. When a "substantial question" exists respecting the correctness of that grant, it does not conflict but coincides with the nature of the grantee's right when the government reexamines the propriety of the grant it has made, and thereafter reaffirms the grant, substitutes a new grant (amended or new claims), or withdraws the grant in whole or in part (the last being subject to review in this court).

### (B) The Merits

The examiner and the board correctly determined that: (1) Ambrosio discloses all features of Etter's claims, except "input information electronic storage means [for accumulating] customer profile information for a plurality of customers;" (2) Azure discloses that feature; (3) the overall result of the inventions of Ambrosio, Azure, and Etter is the same; and (4) Etter's claimed inventions would have been obvious in view of the collective teachings of Ambrosio and Azure which would have provided "a much stronger suggestion for combining the teachings to provide the subject matter of claim 1" than would the prior art cited during the original prosecution.

■ Harking back to his § 282 argument, Etter says the claims were originally allowed over Ambrosio and Jones, and Azure is less pertinent than Jones. Azure and Jones each disclose electronic memory. The board correctly noted, however, that Azure, unlike Jones, discloses use in utility meter reading among possible uses of his input information electronic storage means and is therefore more pertinent. That Azure disclosure is not, as Etter says, mere "hearsay". Etter's arguments that Azure does not disclose calculation and does disclose obsolete technology were properly rejected as insufficiently founded. Etter admits that Ambrosio discloses calculation. Obsolescence, if established, need not necessarily defeat a reference for what it discloses in reference to a claimed invention. Further, Etter relies on the opinion affidavit of Gray for his assertion that Azure discloses obsolete technology. Etter's assertions that Azure cannot be incorporated in Ambrosio are basically irrelevant, the criterion being not whether the references could be physically combined but whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole. *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005, 1013, 217 USPQ 193, 200 (Fed.Cir. 1983); *In re Andersen*, 391 F.2d 953, 958,

---

6. No third party is involved when reexamination is requested by the patentee or initiated *sua sponte* by the Commissioner. When a third party (whether or not an alleged infringer, and whether or not suit has been filed) is the requestor, that party is heard only on whether "a substantial new question" exists. Absent a "substantial new question", an alleged infringer cannot "force" a patentee back into the PTO. Contrary to indications in the concurrence, the reexamination *per se* of the claims is entirely *ex parte*. Whether a requestor, or other party, is permitted to intervene in an appeal to this court (the intervenor being thereby bound by the decision on appeal) is discretionary with this court. In all events, concentration on those instances when an alleged infringer is present at the requesting stage should not influence a decision on whether § 282 applies in the ex parte reexamination proceeding.

7. A patent is not a "deed", a term normally used to describe an attribute of real property.

157 USPQ 277, 281 (CCPA 1968). Review of the Ambrosio and Gray affidavits confirms the correctness of the board's characterization as merely representing opinions unsupported by facts and thus entitled to little or no weight. *See In re Piasecki*, 745 F.2d 1468, 1472–1473 (Fed.Cir.1984), *In re Rinehart*, 531 F.2d 1048, 1052, 189 USPQ 143, 147 (CCPA 1976).

AFFIRMED.

NIES, Circuit Judge, with whom SMITH and BISSELL, Circuit Judges, join, concurring.

While I agree with the result reached by the majority, I disagree with the majority opinion insofar as it holds that, in a reexamination proceeding, a patent is never accorded the presumption of validity. In this case it makes no difference whether the presumption is or is not applied, as the board itself stated. The holding that the claimed invention would have been obvious over art not previously considered is fully justified, had the presumption been recognized.

This case illustrates the advantage of the new reexamination procedure. It worked here precisely as proponents of the legislation envisaged. What has resulted, however, in my view, is an easy case making bad law, not unusual with dicta. The majority decision finds a negation of the statutory presumption that is not expressed in the statute. Further, the majority opinion cannot be justified on the grounds that it is necessary to achieve the statutory objectives. Indeed, this decision can only have a chilling effect on voluntary use of the new procedure by patent owners, which was to be one of its prime objectives. H.R.Rep. No. 1307, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Ad.News 6460, 6463.

After complying with the procedures promulgated by Congress for obtaining a patent, a patent owner is in a position comparable to the holder of a deed or title to property. 35 U.S.C. § 261 (1982); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed.Cir.1983); *Schenck v. Nortron Corp.*, 713 F.2d 782, 784, 218 USPQ 698, 699 (Fed.Cir.1983). That government grant is not to be set aside unless the deciding tribunal is clearly convinced that the grant was in error, having been predicated on erroneous or incomplete facts or a wrong application of law.

The statutory provision in 35 U.S.C. § 282 is absolute:

A patent shall be presumed valid.

Nothing in the reexamination chapter, 35 U.S.C. §§ 301–307, states otherwise.[1] Nothing in the legislative history indicates that Congress intended a patent owner involved in reexamination to "start over" to resecure his patent. On the contrary, the chapter is directed simply to resolution of a new question of patentability under 35 U.S.C. §§ 102 or 103. Specifically, 35 U.S.C. § 304 provides:

§ 304. Reexamination order by Commissioner

If, in a determination made under the provisions of subsection 303(a) of this title, the Commissioner finds that a substantial new question of patentability affecting any claim of a patent is raised, the determination *will include an order for reexamination of the patent for resolution of the question.* [Emphasis added.]

As explained in the legislative history:

This "substantial new question" requirement would protect patentees from having to respond to, or participate in unjustified reexaminations. Further, it would act to bar reconsideration of any argument already decided by the Office, whether during the original examination or an earlier reexamination.

H.R.Rep. No. 1307, 96th Cong., 2d Sess. 7, *reprinted in* 1980 U.S.Code Cong. & Ad. News 6460, 6466.

1. The directive in 35 U.S.C. § 305 to follow "procedures established for initial examination under the provisions of sections 132 [PTO must give notice of rejection with reasons] and 133 [time for response]" patently have no bearing on the substantive issue here.

The presumption of validity dovetails neatly with reexamination to resolve a substantial new question of patentability and its application would fit within the precedent of this court in which the presumption of validity has been defined or its effect explained in a series of decisions.[2] Indeed, in *In re Andersen*, 743 F.2d 1578, 1580, 223 USPQ 378, 380 (Fed.Cir.1984), the PTO acknowledged that the presumption of validity applied.[3]

The presumption of validity places on the challenger of a patent the burden of coming forward with evidence to establish facts which may lead to the conclusion that the patent is invalid. *SSIH Equipment S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375, 218 USPQ 678, 687 (Fed.Cir.1983). The challenger bears the burden of proof of such facts, as well as the ultimate burden of persuasion on the legal issue of validity. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed.Cir.1983). The PTO acknowledges that it bears these burdens in examination of an original application or in reexamination of patent claims. The PTO does not accept, however, that the quantum of proof of facts is "clear and convincing" evidence, which this court has stated to be imposed by the presumption. *SSIH*, 718 F.2d at 375, 218 USPQ at 687.

Our precedent holds that the presumption of validity is not weakened or destroyed during litigation by presentation of more relevant art not considered by the PTO, but may be more easily overcome if such art is presented. *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1358–60, 220 USPQ 763, 769–71 (Fed.Cir.1984). This follows from the absence

of a decision on such matter by the administrative expert, the PTO examiner, to which deference must be given. *Id.* at 1359, 220 USPQ at 770. The situation in reexamination falls precisely within this concept. If reexamination concerns only a question of patentability not previously considered by the PTO, *a fortiori*, there is no prior decision to which deference is due and the presumption can be more easily overcome. But deference should be required in reexamination with respect to a matter which *was* previously considered or is substantially the same, e.g., basing a rejection on a new reference which is not materially different from one which has been overcome. The legislative history quoted above expresses a clear intent, consistent with the presumption of validity, that patents are not to be examined *de novo*. The legislative history quoted by the majority relates only to previously *unconsidered* matters. However, concerning matters which are essentially the same as those previously considered which may be re-raised during reexamination, a patentee is entitled to more respect for his property than the majority decision recognizes. Indeed, the majority's analysis and certain statements in the legislative history which speak of enhancing the presumption of validity by reexamination[4] seem to equate the presumption of validity with the presumption of administrative regularity or correctness, a concept which our precedent has specifically rejected. *American Hoist*, 725 F.2d at 1359–60, 220 USPQ at 770.

The majority justifies its position that the presumption does not apply in reexamination on the ground that reexamination is

---

**2.** *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1358–60, 220 USPQ 763, 769–71 (Fed.Cir.1984); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875–76 (Fed.Cir.1983); *SSIH Equipment S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375, 218 USPQ 678, 687 (Fed.Cir.1983); *Solder Removal Co. v. U.S. Int'l Trade Comm'n*, 582 F.2d 628, 632–33, 199 USPQ 129, 133 (CCPA 1978).

**3.** In this case, the board's position is that it makes no difference whether the presumption applies or not. In *In re DeWitt*, No. 581–71, slip

op. at 5 (Bd.App. May 30, 1984), the appeal of which is also decided today, No. 84–1555 (Fed. Cir. Feb. 27, 1985), the board took the next step and explicitly held that the presumption did not apply to claims under reexamination.

**4.** *See, e.g., Patent Reexamination: Hearings on S. 1679 Before the Comm. on the Judiciary*, 96th Cong., 1st Sess. 1, 60 (1979) (testimony of Arthur R. Whale) ("[Reexamination] will bring the presumption of validity to the same level with respect to newly cited art.").

an *ex parte* proceeding, while the presumption is appropriate only in *inter partes* disputes. The record in this case shows that an alleged infringer in litigation forced the reexamination, filed a brief analyzing the art in connection with its request to the PTO, filed a reply to the patent owner's objection, was served with copies of the examiner's actions and the patent owner's responses, and was permitted to intervene and brief matters in this court. The record here does not disclose that affidavits accompanied the alleged infringer's request for reexamination or his reply to the patent owner's statement, but this type of submission is allowed by such person. To characterize reexamination in its entirety as an *ex parte* proceeding under such circumstances, while technically correct, ignores reality. It is, in my view, more appropriate to view it here as collateral to the pending litigation, although without *res judicata* effect against the alleged infringer if the claims are held valid. 3 Chisum, *Patents* § 11.07[4][f], at 11–128 (1984).

I agree with the majority that reexamination should work in such a manner that it will be "neutral." However, the decision today, in my view, will make patent owners resistent to reexamination. The deck is stacked against them by this decision and by *In re Yamamoto*, 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed.Cir.1984). The court has made reexamination into a proceeding which affords advantages to an infringer over his position in court.

Delay itself is an advantage to an infringer of greater economic power than the patent owner, and the lack of *res judicata* effect against the infringer gives that party two opportunities to attack the patent. These advantages are inherent in reexamination and must be accepted as the *quid pro quo* for the perceived benefits of reexamination. We need not, however, go further and, as a matter of statutory interpretation, also change the rules by which validity is to be judged to the infringer's benefit. An infringer may well have evidence which is sufficient to meet the low threshold of "a substantial new question of patentability", but not sufficiently persuasive in court to overcome the presumption of validity, including the burden of clear and convincing proof. This might be particularly true where evidence is submitted to the PTO in the form of affidavits of experts or others who thereby escape the testing of cross examination.

With respect to claim construction, claims in litigation are to be "so construed, if possible, as to sustain their validity." *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577, 221 USPQ 929, 932 (Fed.Cir.1984), *citing Klein v. Russell*, 86 U.S. (19 Wall.) 433, 466, 22 L.Ed. 116 (1874); *Turrill v. Michigan, S. & N.I. R.R.*, 68 U.S. (1 Wall.) 491, 510, 17 L.Ed. 668 (1864). Claims in reexamination, on the other hand, "will be given their broadest reasonable interpretation." *In re Yamamoto*, 740 F.2d at 1571, 222 USPQ at 936. Thus, claims may be valid and infringed in court but invalid in the PTO and, *a fortiori*, not infringed. It is small solace to a patent owner in that situation that he may amend his claims in reexamination and secure narrower new claims. Upon amendment, his claims are subject to complete examination and an infringer has the benefit of intervening rights to the extent afforded under 35 U.S.C. § 252 pursuant to 35 U.S.C. § 307(b).

Given this court's interpretation of proper reexamination procedure, the obvious strategy of an infringer would be to force the patentee back to the PTO where the patentee's presumptive advantage, as well as claim construction advantage, is eliminated.

The majority's analysis focuses on the aspect of reexamination dealing with the threshold determination that "a substantial new question of patentability" has been raised. The majority then continues its analysis of this case as if reexamination itself is a "limited examination" directed to that question. However, our court has also analogized reexamination to reissue proceedings. *In re Yamamoto*, 740 F.2d at 1572, 222 USPQ at 937. In reissue, examination is not limited to the question

raised by the patent owner. 37 C.F.R. § 1.176. The PTO has taken a similarly expansive view of the scope of reexamination in its regulations and in its stated operating procedures.

Reexamination, as interpreted by the PTO, is a two step process involving: (1) the determination that there is "a substantial new question of patentability", and (2) reexamination itself. The latter step is not constrained, in the PTO view, by the former. In a very real sense, once reexamination is ordered (an unreviewable decision), the patent holder "starts over" under the PTO view on all § 102 and § 103 issues with respect to all claims, amended or unamended, whether or not related to the new question.

With respect to the first step, i.e., determining whether there should be reexamination, PTO regulation 37 C.F.R. § 1.515 provides:

§ 1.515 Determination of the request for reexamination.

(a) Within three months following the filing date of a request for reexamination, an examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent is raised by the request and the prior art cited therein, *with or without consideration of other patents or printed publications.* [Emphasis added.]

Turning to the *Manual of Patent Examining Procedure* (MPEP), one sees that examiners are instructed as follows, when considering a request for reexamination:

§ 2242 *Criteria for Deciding Request.*
... Material new arguments or interpretations can raise "a substantial new question of patentability" as to prior art patents or printed publications already considered by the Office.

§ 2244 *Prior Art on Which Determination Is Based.*

5. In publishing the implementing regulations, Acting Commissioner of Patents and Trade-

The determination whether or not "a substantial question of patentability" is present *can be based upon any* prior art patents or printed publications. Section 303(a) of the statute and 37 CFR 1.515(a) provide that the determination on a request will be made "with or without consideration of other patents or printed publications," i.e., other than those relied upon in the request. The examiner is not limited in making the determination to the patents and printed publications relied upon in the request. The examiner can find "a substantial new question of patentability" based upon the prior art patents or printed publications relied upon in the request, a combination of the prior art relied upon in the request and other prior art found elsewhere, *or based entirely on different patents or printed publications.* The primary source of patents and printed publications used in making the determination are those relied upon in the request. However, *the examiner can also consider the prior art of record in the patent file from the earlier examination* or a reexamination and any patents and printed publications of record in the patent file from submissions under 37 CFR 1.501 which are in compliance with 37 CFR 1.98 in making the determination.

\* \* \* \* \* \*

Any question as to whether a substantial new question of patentability exists should be resolved *in favor of* granting the request for reexamination. [Emphasis added.]

With respect to the scope of the examination on reexamination, the second step, 37 C.F.R. § 1.552(a) provides:

Patent claims will be reexamined on the basis of patents or printed publications.

No limitation is found there, or is intended, to limit reexamination to the new question of patentability which started reexamination.[5] In making rejections, the examiners are told in the MPEP:

marks Tegtmeyer stated with respect to the scope of reexamination:

§ 2256 *Prior Art Patents and Printed Publications Considered by Examiner in Reexamination.*

The primary source of prior art will be the patents and printed publications cited in the request.

The examiner must also consider patents and printed publications

—cited by a reexamination requester under § 1.510

—cited in patent owner's statement under § 1.530 or a requester's reply under § 1.535 if they comply with § 1.98

—cited by patent owner under a duty of disclosure (§ 1.555) in compliance with § 1.98

—discovered by the examiner in searching

—*of record in the patent file from earlier examination*

—of record in patent file from § 1.501 submission prior to date of an order if it complies with § 1.98. [Emphasis added.]

§ 2216 *Substantial New Question of Patentability.*

... If a substantial new question of patentability is found as to one claim, *all claims* will be reexamined during the ex parte reexamination process. [Emphasis added.]

The MPEP example of the processing of a "typical" reexamination shows a request for reexamination of claims 1–4 of a patent (MPEP § 2214, at 2200–11); a decision that a new question is raised as to claims 1–3 and *no* new question as to claim 4 (MPEP § 2246, at 2200–29); and, finally, a decision (1) not to reexamine claims 1–3 because of a court decision; (2) a rejection of issued claim 4; (3) a determination of patentability of issued claim 5; and (4) a rejection of new claim 6 (MPEP § 2262, at 2200–41). Thus, issued claim 4 is lost—although no decision was made that a substantial new question of patentability existed to involve the claim in the reexamination.

Coupling this expansive view of the scope of reexamination with the denial of a presumption of validity gives *carte blanche* to the Office to "second guess" the original allowance on the basis of the art originally considered or, at least, not materially different. This unrestrained view of its power during reexamination was, indeed, expressed by the board in *In re DeWitt*, No. 581–71, slip. op. at 5 (Bd.App. May 30, 1984), the appeal of which is also decided today, No. 84–1555 (Fed.Cir. Feb. 27, 1985), in which the board opined:

> [T]here is no policy reason against the Office reconsidering its own work product and admit it may have made an error....

This view is too simplistic. The questions of validity of patents over prior art are not clear cut. The conflicting testimony of responsible experts, which this court sees every day in the records of patent cases before it, belies the concept that determining an "error" was made will be readily apparent.[6] The ultimate decision is a judgment call and the result may well depend on whether one starts with the view that the patent is valid or that reexamination starts on a clean slate. *See American Hoist*, 725 F.2d at 1358–60, 220 USPQ at 769–71 (judgment of invalidity reversed, *inter alia*, for failure to accord presumption of validity).

For the foregoing reasons, I believe it would be the correct and desirable interpretation of the statute to apply the presump-

---

The scope of the reexamination proceeding which was originally proposed has been essentially adopted in the final rules. The suggestions that the rules be broadened to include other issues have not been adopted since the other issues would unduly complicate the proceedings, raise the expense of the proceedings and raise questions whether such issues can be considered under Pub.L. 96–517. 1007 O.G. 31 (1981).

Thus, while "other" issues such as fraud, will not be considered, the only stated limitation on §§ 102 and 103 issues is that indicated above.

6. "Federal courts have a difficult enough time trying to determine whether an invention, narrowed by the patent application procedure and fixed in the specifications which describe the invention for which the patent was granted, is patentable." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 492, 94 S.Ct. 1879, 1891, 40 L.Ed.2d 315 (1974).

tion of validity in reexamination in the same manner as in court proceedings, and I would also apply the identical standard for claim construction.[7]

Alternatively, I urge the majority to limit reexamination to "resolution of the question," that is, to the "substantial new question of patentability" which caused the reexamination to be ordered, in accordance with 35 U.S.C. § 304. Nothing in the statute constrains the Commissioner, of course, from finding more than one substantial new question of patentability. However, under the statute, the *Commissioner* is required to make such determination. He should not merely allow reexamination to proceed in any direction at the discretion of an examiner. Clearly, reexamination was not designed to allow the PTO simply to reconsider and second guess what it has already done.

Bissell, Circuit Judge, filed concurring opinion.

7.  Implicit in my opinion, of course, is that no presumption applies to new or amended claims.