**E.I. du PONT de NEMOURS & COMPANY, Plaintiff,**

v.

**PHILLIPS PETROLEUM COMPANY, Phillips 66 Company, and Phillips Driscopipe, Inc., Defendants.**

Civ. A. No. 81–508–JLL.

United States District Court, D. Delaware.

April 6, 1987.

William O. LaMotte III of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. and John O. Tramontine, Edward F. Mullowney, Glenn A. Ousterhout and Thomas J. Vetter of Fish & Neave, New York City of counsel, for plaintiff.

C. Waggaman Berl, Jr., Wilmington, Del., Fred H. Bartlit, Jr., Philip S. Beck, Emily Nicklin, John Donley, and Philip C. Swain of Kirkland & Ellis, Chicago, Ill. and Harry J. Roper, George S. Bosy, Lawrence E. Apelzon, Raymond N. Nimrod and Steven R. Trybus of Neuman, Williams, Anderson & Olson, Chicago, Ill. of counsel, for defendants.

Richard E. Poole and Peter M. Sieglaff of Potter, Anderson & Corroon, Wilmington, Del. and Ford F. Farabow, Jr., Basil J. Lewis of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C. and Patrick L. Henry of Morristown, N.J. of counsel, for Allied-Signal, an applicant for leave to file an amicus brief.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, Del., for Mobil Oil Corp., an applicant for leave to file an amicus brief.

LATCHUM, Senior District Judge.

## I. BACKGROUND

In this patent infringement case brought by E.I. du Pont de Nemours and Company ("DuPont") against Phillips Petroleum Company, Phillips 66 Company, and Phillips Driscopipe, Inc. (collectively "Phillips"), this Court on February 26, 1987, 656 F.Supp. 1343, entered an Opinion (Docket Item ["D.I."] 264) and a Judgment (D.I. 265) which held 82 of Phillips' products infringed one or more of claims 1, 2, 5, 10, 12, and 14 of DuPont's United States Patent No. 4,076,698 ("the '698 patent"). Paragraph 6 of that Judgment permanently enjoined defendants, their officers, agents, employees, and licensees, if any, from continuing to infringe, manufacture, use or sell any product which embodies the invention of the '698 patent. (*Id.* ¶ 6.)

The permanent injunction was granted only after the Court had conducted a 21-day non-jury trial from July 21, 1986 through August 18, 1986, on the merits of the liability issues of validity, enforceability and infringement, heard firsthand the testimony of 29 fact and expert witnesses, reconsidered 3,300 pages of trial transcripts, reviewed 999 exhibits, and digested 409 pages of post-trial briefs.

On February 27, 1987, Phillips moved, pursuant to Rule 62(c), Fed.R.Civ.P., for a stay of the injunction pending appeal. At a conference with opposing counsel held on that same date, the Court at Phillips' request and without objection by DuPont reluctantly stayed the permanent injunction until this Court had received briefs according to an established schedule and ruled on Phillips' motion for a stay of the injunction pending appeal. (D.I. 268.)

Two non-parties, Allied-Signal and Mobil Oil Corporation, on March 13, 1987, moved for leave to file *amicus* briefs in support of Phillips' stay motion. These non-parties also filed briefs with their motions. (D.I. 270, 271 & 274.) While the Court did not formally rule on these motions, it has read the proffered briefs and has taken their

contents into consideration in ruling upon Phillips' motion for a stay.[1]

## II. DISCUSSION

██ 35 U.S.C. § 283 provides that a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the Court deems reasonable." Under this provision, the decision whether to grant a permanent injunction is a matter within the sound discretion of the trial court. *Roche Products v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 865 (Fed.Cir.1984). As a court of equity, the Court must consider all circumstances, including the adequacy of the legal remedy, irreparable injury, whether the public interest would be served, and the hardship on the parties and third parties. *Roche*, 733 F.2d at 865–66; *Shiley Inc. v. Bentley Laboratories, Inc.*, 601 F.Supp. 964, 969 (C.D. Cal.1985), *aff'd*, 794 F.2d 1561 (Fed.Cir. 1986).

Phillips, applying the traditional four-factor test, contends that this Court should stay the permanent injunction pending appeal because it has made a strong showing that it (1) is likely to succeed on the merits on appeal; and a showing that (2) unless a stay is granted, it will suffer irreparable injury, that (3) no substantial harm will come to other parties, and (4) that a stay will do no harm to the public interest. (D.I. 274.) The Court disagrees and finds that Phillips has not made the strong showing necessary for the relief requested. The Court will consider the four-factor test in order.

### 1. *Phillips' Likelihood Of Success On Appeal*

██ Under this heading, Phillips continues to argue that this Court was wrong in holding the '698 patent valid, enforceable and infringed. All of its arguments are warmed-over versions of its prior contentions upon which it did not prevail after trial. While this Court does not pretend to be infallible, it does know that its findings of fact were impartially made based on the credible testimony and evidence presented at trial and that its conclusions of law followed precedents established by controlling Supreme Court and Federal Circuit decisions. No purpose would be served here to rehash those findings of fact and conclusions of law already dealt with in great detail in the Court's February 26, 1987 Opinion. Phillips has not demonstrated that this Court was incorrect and is likely to be reversed on appeal. Accordingly, the Court concludes that Phillips has not made a strong showing of likelihood of success on appeal.

### 2. *Phillips' Irreparable Harm*

██ Phillips here argues that while the permanent injunction will not force it out of business or force it to tear down its plant, it will lose customers and business which it will probably be unable to recover if this Court's decision is reversed. However, the loss of customers or business built upon the sale and use of infringing products does not amount, in the context of a patent infringement suit, to irreparable harm from which Phillips should be shielded. Thus, in reality, the only harm that Phillips will suffer if the injunction is not stayed is the loss of profits from the use and sale of infringing products. The Court has already found that massive infringement has occurred in the past and now Phillips begs that it be permitted to continue to infringe. To put an end to infringement is the reason for 35 U.S.C. § 283 which gives the Court power to issue injunctions. As the Federal Circuit stated in *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed.Cir. 1986):

> Downwind said its infringing sales were between 1,000 and 2,000 sailboards a year since it began operations in 1981. AMF was selling about 1,800 sailboards a year during the same four-year period. That sailboards are Downwind's primary

---

1. It should be noted that Phillips filed a notice of appeal on March 16, 1987. (D.I. 275.) On March 30, 1987, DuPont also filed a notice of appeal to paragraph 5 of the judgment solely on the ground of error in requiring proof of wilful infringement by clear and convincing evidence rather than by a preponderance of the evidence. (D.I. 278.)

product, and that an injunction might therefore put Downwind out of business, cannot justify denial of that injunction. One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected. The district court, recognizing the absence of bad faith on the part of all parties, weighed the effect of its orders on each. In so doing it indicated that WSI's entire business was built on sailboards and accessories, and thus that Downwind and WSI were in the same boat. Under those circumstances, no warrant appears on this record for denying the requested injunction against continued infringement by Downwind.

Recent district court decisions are to the same effect, e.g., *Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 226 USPQ 842, 845 (W.D.Pa.1985), *aff'd in part and remanded in part*, 793 F.2d 1565 (Fed.Cir. 1986):

Stora, as in *Smith International*, was aware of Crucible's patents and, based upon the assumption it was infringing Crucible's patents, chartered a strategy "to check patent validity; contest patent validity; and in the process, to get defendants' products into the United States market." *Crucible [Inc. v. Stora Kopparbergs Bergslags A.B.]*, 594 F.Supp. [1249] at 1264, 226 USPQ at 48. Stora assumed the risk that its strategy would not succeed, that the patents would be found valid and its business and markets thereafter disrupted.... Consequently, as in *Smith International*, plaintiff now is entitled to its injunction and Stora, therefore, should not be heard to complain of that which it had every reason to anticipate would be the result if it lost its gamble.

Also in *Polaroid Corp. v. Eastman Kodak Co.*, 641 F.Supp. 828, 228 USPQ 305 (D.Mass.1985), *aff'd*, 789 F.2d 1556 (Fed. Cir.1986), the district court stated at 343–44:

I am not unmindful of the hardship an injunction will cause—particularly to Kodak customers and employees. It is worth noting, however, that the harm Kodak will suffer simply mirrors the success it has enjoyed in the field of instant photography. To the extent Kodak has purchased that success at Polaroid's expense, it has taken a "calculated risk" that it might infringe existing patents. *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581, 219 USPQ 786, 692–93 (Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687, 220 USPQ 385 (1983). As one court has observed, the infringer "should not be heard to complain" when it loses its gamble and reaps predictable results. *Crucible, Inc.*, 226 USPQ at 845. (Footnote omitted.)

*Accord In re Cole Patent*, 606 F.Supp. 45, 47 (D.Del.1984). These precedents apply equally to the present case.

### 3. Harm To DuPont

■ Phillips on this point argues that DuPont will not be substantially harmed by a stay because DuPont has followed a program of licensing all comers under the '698 patent and thereby became a licensor for money fees, has never attempted to exclude anyone from the marketplace by its patent, and that in any event, DuPont intends to sell its resin manufacturing business. Phillips maintains that all these reasons show that DuPont will be adequately compensated by money damages for Phillips' continued infringement which will occur during the appeal period. The Court finds that none of these reasons hold water.

Phillips' first argument is that it is a foregone conclusion that it will be licensed by DuPont if this Court is affirmed on appeal. DuPont disputes this and there is no assurance that a license will follow and only royalties will be collected from Phillips. This is far too speculative to be a premise for granting a stay of the injunction. Second, Phillips says DuPont has taken no steps to exclude anyone from the marketplace. If that is true, why has this Court spent so much time and effort in this patent infringement case against Phillips? This argument simply does not make any sense. Third, DuPont contends that even

if it does sell its resin manufacturing plants, it will remain in the high density polyethylene business in several areas, particularly pipe, shrink-film, and wire and cable products.

The important point, however, is that, as a matter of law, DuPont will be irreparably injured. The Federal Circuit has held that in a patent infringement case, where the infringing products will continue to infringe and thus damage a plaintiff in the future, monetary damages are not generally considered adequate. This was explained in *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.1983), by the Federal Circuit, even in the context of a preliminary injunction, as follows:

> The very nature of the patent right is the right to exclude others. Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding. A court should not be reluctant to use its equity powers once a party has so clearly established his patent rights. We hold that where validity and continuing infringement have been clearly established, as in this case, immediate irreparable harm is presumed. to hold otherwise would be contrary to the public policy underlying the patent laws.

This Court has found that for over five years DuPont's exclusive patent rights have been lost during the pendency of this suit. Since DuPont has now established its right to an injunction against Phillips after a full trial on the merits, the continuing harm should be ended by injunctive relief now.

### 4. *Public Interest Considerations*

■ On this point, Phillips conjures up the fantasy that there will be a shortage of supply of resins in the polyethylene industry if Phillips can no longer produce infringing resins and that Phillips' customers will be unable to find alternate sources of supply of Phillips' infringing resins. Having read the affidavits submitted by both sides (D.I. 274 Appendix & D.I. 277), this Court is not convinced that this bleak scenario will occur and, at best, is pure speculation.

Finally, the two non-parties, Allied-Signal and Mobil Oil Corp., who filed *amicus* briefs, are DuPont licensees under the '698 patent. They complain that they might be required to pay royalties that they agreed upon in the licensing agreements they entered with DuPont. These non-parties and others made a business decision by entering such agreements. If a reissue patent issued, they would be required to pay royalties, or if no reissue patent issued, no royalties would be due. On the other hand, if they had not taken the license, they could be faced by higher royalties or an infringement suit which could result in substantial damages and an injunction. Having made their business decision, they must live with it and their position does not favor a stay of the injunction.

### III. CONCLUSION

When all is said and done, to stay the injunction pending appeal and thus permit the massive past infringement to continue would eviscerate the public policy underlying the patent laws.

Having balanced all the equitable factors involved, this Court, in its sound discretion, finds that reimposing the permanent injunction issued on February 26, 1987, is favored and that the injunction should not be stayed pending appeal.

An order to this effect will be entered.