**E.I. DU PONT DE NEMOURS & COMPANY, Plaintiff,**

v.

**PHILLIPS PETROLEUM COMPANY, Phillips 66 Company, and Phillips Driscopipe, Inc., Defendants.**

**Civ. A. No. 81–508–JLL.**

United States District Court, D. Delaware.

Aug. 16, 1989.

---

374

William O. La Motte III of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and John O. Tramontine, Edward F. Mullowney, David J. Lee, Glenn A. Ousterhout, Thomas J. Vetter and Michael A. Messina of Fish & Neave, New York City, of counsel, for plaintiff.

Craig B. Smith and Robert J. Katzenstein of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., and Harry J. Roper, George S. Bosy, Raymond N. Nimrod, and Steven R. Trybus of Neuman, Williams, Anderson & Olson, Philip S. Beck and Philip C. Swain of Kirkland & Ellis, Chicago, Ill., of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I.  INTRODUCTION

Plaintiff ("DuPont") has moved this Court for entry of a final judgment pursuant to Fed.R.Civ.P. 54(b) on defendants'

("Phillips")[1] counterclaim for a declaratory judgment in this patent infringement action. (Docket Item ["D.I."] 319.) This motion is the latest maneuver by the parties in this case to have their respective forum of choice pass first on the patent in suit, U.S. patent 4,076,698 ("'698"). Phillips wants the U.S. Patent and Trademark Office (the "Patent Office") to find it unpatentable, while DuPont wants this Court's decision on validity, enforceability and infringement to stand.

The chronology of events leading the Court and the parties to this point is somewhat complex. But, as set forth in detail below, DuPont applied to the Patent Office for reissue of the patent about a year before filing this suit. About 2 years into this litigation DuPont requested the Patent Office to stay the reissue pending a decision here. Then, about 4 years into this litigation Phillips ran into the Patent Office and requested reexamination of the patent, and the reissue and reexamination were merged. This Court went ahead with trial, and although the claims of the patent have been rejected several times by the Patent Office, there has not been, to this day, a binding decision by that agency. We are now, apparently, where we were nearly four years ago with respect to such a decision. But, nonetheless, Phillips now advances the "threat" of such a decision as a just reason to delay appeal of a final decision of this Court.

The question of who (this Court or the Patent Office) should "lead," if anyone should, has been on the back of the Court and the parties for nearly a decade. The question also has been complicated lately by a decision (or an interpretation) by the Court of Appeals for the Federal Circuit.

The Court turns now to a historical sketch of the facts here.

### II.  BACKGROUND

On October 20, 1980, DuPont filed an application with the Patent Office to reis-

---

1. The designation "Phillips" will be used herein to refer collectively to all of the defendants in this case, unless indicated otherwise.

sue all of the claims of the '698 patent. Three companies, Phillips, Dow Chemical Company, and Mobil Oil Company filed protests to the reissue under 37 C.F.R. § 1.291, and were granted limited active participation.

DuPont filed its complaint in this action on November 13, 1981 (D.I. 1), and filed an amended complaint on February 26, 1982. (D.I. 22.) The amended complaint charged Phillips with infringement of the '698 patent, and prayed for damages, a declaratory judgment, and an injunction. (*See id.*)

Phillips filed its answer on December 10, 1981, entitled "Answer, Affirmative Defenses and Counterclaim." (D.I. 7.) An amended answer was filed on March 18, 1982. (D.I. 24.) The 13–page amended answer was divided, essentially, into 3 parts. The first (¶¶ 1–8) responded to the allegations of the amended complaint. The second (¶¶ 9–25) was captioned "Affirmative Defenses." The defenses were that the '698 patent was invalid on several grounds [2] and unenforceable because of misrepresentations or nondisclosures in the Patent Office, that DuPont was collaterally estopped from asserting an earlier filing date than that determined by an interference proceeding, and that Phillips' conduct did not infringe the '698 patent. The third (¶¶ 26–47) was captioned "Counterclaim." It alleged that as evidenced by the pleadings, an "actual justiciable controversy" existed between the parties with respect to the validity of the '698 patent and Phillips' liability for infringement of it, and that therefore this Court had "jurisdiction of this Counterclaim under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201 and § 2202, and under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a)." Phillips prayed for judgment upon its counterclaim that the '698 patent be declared not infringed and invalid, and that DuPont be declared estopped to enforce it. (D.I. 24 at 12.)

DuPont answered the counterclaim on March 29, 1982. (D.I. 29.) It prayed that the counterclaim be dismissed, and that it be awarded costs and expenses in defending the counterclaim. (*Id.* at 1–2.)

On February 19, 1982, the Patent Office rejected all of the claims in the reissue. Certain claims were amended on August 23, 1982, and all claims were again rejected on November 8, 1982. On July 15, 1983, pursuant to a request by DuPont, the Patent Office stayed the reissue in favor of the litigation in this Court.

Discovery continued by both parties. Then, on February 26, 1985, Phillips requested the Patent Office to reexamine the '698 patent pursuant to 37 C.F.R. § 1.510. Reexamination was ordered on April 26, 1985. On June 6, 1985, the stay of the '698 reissue proceedings was lifted, and on June 25, 1985, the Patent Office merged the reissue and reexamination proceedings.

On November 21, 1985, this Court entered an Order, stipulated to by the parties, that the issues of liability and damages would be bifurcated for separate trials, and scheduled trial on the liability issues to begin on June 2, 1986. (D.I. 161.) At a status conference which led to the order, the parties agreed that in order to speed the case along to trial on the liability issues, they would abort discovery on the damages issues. (*See* D.I. 160 at 3–10.) However, while agreeing that liability and damages should be tried separately, counsel for Phillips urged the opinion that an office action in the Patent Office proceeding was imminent, and that "the most efficient way to proceed" would be to wait for the examiner's decision and then "proceed with it" to the trial on liability. (D.I. 160 at 8–10.)

On May 12, 1986, the examiner issued a final rejection of all of the claims in the merged proceeding. On June 11, 1986, DuPont filed a notice of appeal of the rejection, and briefing of the issue was due August 11, 1986.

On June 20, 1986, Phillips moved here for summary judgment on the liability issues, arguing that in view of the Patent Office's rejection of all of the '698 claims, DuPont

---

**2.** The grounds for invalidity alleged were 35     U.S.C. §§ 101, 102, 103, 112, and 132.

was collaterally estopped from litigating the issues here. (D.I. 210.) This Court deferred consideration of the motion until after trial.

Trial in this Court on the liability issues began on July 21, 1986.[3] That same day, DuPont filed a petition in the Patent Office requesting that the merged proceedings there be stayed pending this Court's decision. On August 6, 1986, the Patent Office stayed its proceedings pending a decision by this Court, and also stayed briefing of the appeal. Trial in this Court continued through August 21, 1986. The parties completed post-trial briefing on January 7, 1987. On February 26, 1987, this Court entered a judgment (1) denying Phillips' motion for summary judgment on the collateral estoppel issue; and holding that (2) Phillips had not met its burden of showing the '698 patent invalid as anticipated, obvious, or indefinite; (3) Phillips had not shown the patent to be unenforceable; (4) Dupont had proved infringement; and (5) DuPont had not proved that the infringement was willful. (D.I. 265.) The judgment also permanently enjoined further infringement, and ordered an accounting to determine damages for past infringement. (*Id.*) *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 656 F.Supp. 1343 (D.Del.1987), *rev'd in part,* 849 F.2d 1430 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988).

On February 27, 1987, Phillips moved pursuant to Fed.R.Civ.P. 62(c) for this Court to stay the injunction pending its appeal of the judgment under 28 U.S.C. § 1292(c)(2). (D.I. 267.) The Court temporarily stayed the injunction to allow briefing by the parties. (D.I. 268.)

On March 4, 1987, DuPont filed a notice of this Court's decision with the Patent Office, and requested that the reexamination proceedings be vacated and the reissue application allowed. On March 16, 1987, Phillips filed a notice of appeal of this Court's judgment to the Court of Appeals for the Federal Circuit. (D.I. 275.)

This Court denied the motion to stay the injunction on April 6, 1987, and the injunction was reimposed. (D.I. 283.) *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 659 F.Supp. 92 (D.Del. 1987). On April 22, 1987, the Patent Office vacated the reexamination proceedings, and continued the stay of the reissue. Phillips then moved the Federal Circuit for a stay of this Court's injunction, and the stay was granted on December 9, 1987. (D.I. 286.) *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 835 F.2d 277 (Fed. Cir.1987).

On June 15, 1988, the Federal Circuit reversed in part, affirmed in part, and vacated in part this Court's judgment on the liability issues. (D.I. 287.) *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). The Federal Circuit also remanded the case for this Court to reconsider the validity and infringement of two claims in view of the appellate disposition.

On July 29, 1988, Phillips presented a petition to the Patent Office requesting it to rescind its order vacating the reexamination proceedings, and to resume the merged proceedings. The Federal Circuit had, by then, decided *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988). There the Federal Circuit decided that in view of language used by Congress in 35 U.S.C. § 304—that reexamination be conducted with "special dispatch"—the Patent Office had no authority to stay its reexamination proceedings pending the outcome of federal district court litigation involving the same patent. *See Ethicon,* 849 F.2d at 1426. That meant Phillips could argue to the Patent Office that it should not, and indeed could not, further stay the merged proceedings.

Arguments were made to this Court by both sides regarding the prudence of staying the proceedings here pending a ruling by the Patent Office. The Court held a

---

3. Trial on the liability issues, originally scheduled to begin June 2, 1986, was rescheduled to begin July 21, 1986, at a final pretrial conference held by this Court on April 17, 1986. (D.I. 176.)

conference on this point September 6, 1988, where the Court and the parties aired their views on the record. The Court opined that, in view of *Ethicon,* it would be a futile exercise to proceed further only to have the Patent Office trump a decision here. (*See* D.I. 290.) DuPont opined that the portion of *Ethicon* dealing with the effect (or lack thereof) of a district court's finding that invalidity had not been proved was *dicta;* and that, furthermore, in *Ethicon* the party that requested reexamination was not also a party to district court litigation of the patent in reexamination. (*See id.* at 14.) Of course, Phillips was confident in the prudence of a stay here. (*See id.* at 5.)

On September 14, 1988, DuPont wrote to inform the Court that two days earlier the Patent Office had dismissed Phillips' petition to resume the reexamination-reissue proceedings as untimely under 37 C.F.R. 1.181(f). The Assistant Commissioner had opined that "in failing to timely petition the decision [to vacate], [Phillips] acquiesced in the director's decision to vacate the reexamination." DuPont also suggested a briefing schedule for the remanded matters.

Phillips volleyed on September 21, stating that it opposed the briefing schedule for several reasons. "First," the Patent Office's September 12 order did not put an end to things because Phillips was petitioning for reconsideration of this order and had filed a "new" reexamination request. "Second," it would be wasteful to proceed before DuPont's petition to the Supreme Court for certiorari had been filed or ruled upon. And "Third," the remand proceedings would need an evidentiary hearing which, it presumed, could not immediately be accommodated by the Court's calendar.

Several more letters from each side were received by the Court where the efficacy of each party's position was vigorously advocated by its proponent then assailed by the other. Then on November 1, 1988, DuPont wrote to inform the Court that Phillips'

request for reconsideration of the order denying the petition to resume reexamination had been denied. Therefore, on November 7, 1988, the Court issued an order setting a briefing schedule for the matters remanded.

On December 6, 1988, Phillips informed the Court that the Supreme Court had denied certiorari of the Federal Circuit's decision in this case, and that the Patent Office had granted Phillips' request for reexamination of the '698 patent. Dupont followed on December 29, informing the Court that it was filing a petition to vacate the order granting reexamination. Not to be outdone, Phillips responded to the Court on January 12, 1989, trumpeting the news that DuPont's petition had been returned as improper, and that the Patent Office had merged the new reexamination with the stayed reissue. Therefore, Phillips counseled the Court to reconsider the earlier request for a stay.

After the many stalls and starts urged by the parties, the Court did not stay the remand proceedings. On March 6, 1989, a judgment and opinion was entered on the matters remanded. (D.I. 312; D.I. 313.) The judgment of the Court was that (1) Phillips' motion for summary judgment or alternatively to reopen the record was denied; (2) Phillips had not met its burden of proving invalidity; and (3) DuPont had proved infringement of the claims at issue on remand. (D.I. 313.) [4] The judgment also permanently enjoined Phillips from further infringement of the '698 claims left at issue, and ordered an accounting to determine damages for past infringement. (*Id.*) *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 711 F.Supp. 1205 (D.Del.1989).

This time, Phillips did not appeal. Its position is that it "had the option (but was not required) to appeal immediately." (D.I. 321 at 2.) Rather, it "decided to await conclusion of the accounting before appealing the liability issues resolved by this Court." (*Id.*)

---

**4.** The judgment was amended on March 20, 1989, by Order on Consent, to include another

product as infringing. (D.I. 316.)

Hearing nothing from the parties since the decision on the matters remanded, the Court wrote on July 7, 1989:

Dear Counsel:

According to the Clerk's docket entries, nothing of substance has been done in this case since the consent amendment to the Court's Judgment and Opinion entered on March 6, 1989 on remand. No appeal has been taken and the Court is unable to determine whether the parties are proceeding with discovery on the issue of damages. Therefore, I request counsel to advise me in writing the present status of the litigation in this court, their intention with respect to future proceedings in this litigation, and some suggested time frame for completing this case pending since 1981.

Please submit such a status report on or before *July 21, 1989.*

On July 18, 1989, DuPont filed the motion now before the Court. Once again, in response, Phillips wrote to the Court extolling the virtues of awaiting a decision by the Patent Office which (in now familiar words) "we can expect ... in the near future."

If one thing is clear to the Court, it is that the primary (if not sole) reason for this motion by DuPont, and for Phillips' opposition to it, is to have (or to prevent) Federal Circuit review now of this Court's decision on the remanded matters. DuPont having this Court's judgment in hand, and Phillips no doubt expecting a more favorable decision from the Patent Office, are jockeying for the tactical "pole position." It seems that every day review of this Court's decision can be put off is another day for the Patent Office to render a decision favorable to Phillips. On the other hand, the sooner the Federal Circuit reviews this Court's decision, the better chance DuPont has of having it affirmed prior to a Patent Office decision.

The Court turns now to consideration of DuPont's motion.

III.  DUPONT'S MOTION

DuPont has moved for an order directing entry of a final judgment pursuant to Fed.

R.Civ.P. 54(b) on Phillips' counterclaim. (D.I. 319.) Rule 54(b) provides that:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

The Supreme Court has outlined the steps this Court must follow in making determinations under Rule 54(b). First, it must determine that there is a "final" decision. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980) (citation omitted). That is, there must be "a decision upon a cognizable claim for relief," and it must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* If so, the Court must further determine that there is no just reason for delay of an appeal. *Id.* at 8, 100 S.Ct. at 1464–65.

The parties make the following arguments. DuPont argues that the relationship between the adjudicated and unadjudicated claims here is irrelevant to whether there is "more than one claim" for purposes of Rule 54(b). (D.I. 320 at 7.) Instead, DuPont argues, this is one factor the Court can consider in deciding whether there is "just reason for delay." (*Id.*) This action, DuPont contends, "plainly involves" more than one claim, viz: DuPont's claim for patent infringement and Phillips' counterclaim for a declaratory judgment. (*Id.*)

DuPont contends further that the counterclaim has been resolved with finality, because the Court has finally decided the matters of validity, enforceability and infringement raised by it and there is nothing further to be litigated. (*Id.* at 7–8.) DuPont argues, there is no "just reason for delay" because "the equities here favor certification"; the time and expense of a proceeding on damages will be substantial and wasteful if the Federal Circuit reverses this Court's decision, while settlement may be encouraged if it is affirmed; and the Federal Circuit will not be required to decide the same thing twice because its decision on the liability issues would be *res judicata* in any subsequent appeal on the damages issues. (*Id.* at 8–10.)

Of course, Phillips' view of the status quo is dramatically different than DuPont's. First, Phillips contends, this Court's ruling on the liability issues did not finally dispose of a separate claim, because "a ruling on liability issues, when damages issues remain to be tried, is interlocutory and lacks the finality required for Rule 54(b) certification." (D.I. 321 at 3–4.) "Phillips' counterclaim is a mirror image of DuPont's complaint and seeks merely a declaratory judgment that DuPont has not proven its case on infringement while Phillips has established its affirmative defenses of invalidity and non-enforceability." (*Id.* at 3–4.) "Such a counterclaim is not a separate claim for purposes of Rule 54(b), and a judgment on it would not satisfy the finality requirement of 28 U.S.C. § 1291." (*Id.* at 4.) Furthermore, Phillips adds, there are just reasons for delay, viz: it is not clear that there would be appellate jurisdiction over the claim and the parties would be bogged down with "jurisdictional arguments"; there is a close relationship between the declaratory judgment and infringement claims; this Court may want to reconsider its decision on the matters remanded in view of any decision that may be rendered by the Patent Office; DuPont's argument to the contrary notwithstanding, the Federal Circuit may have to consider the issues again; and, finally, an interim decision by the Patent Office would be binding on this Court in all pending litigation and "would moot this case." (*Id.* at 10–15.)

These arguments noted, the Court turns to analysis of the matter.

With respect to whether there is a "final" decision, Phillips' argument is that, somehow, the "finality" of a decision on its counterclaim for a declaratory judgment is tainted by the fact that "damages" have yet to be litigated on DuPont's infringement claim. Phillips' argument apparently is that the infringement claim and the counterclaim for a declaratory judgment are, really, a single claim. (*See also* D.I. 321 at 9, 13.)

The Court is not persuaded. Phillips' counterclaim is, indeed, a cognizable claim for relief. *See* E. Borchard, *Declaratory Judgments*, Ch. XI at 804–06 (2d ed. 1941). *See also Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust For Southern Calif.*, 463 U.S. 1, 19 n. 19, 103 S.Ct. 2841, 2851 n. 19, 77 L.Ed.2d 420 (1983). An independent basis for the Court's jurisdiction is alleged, and a declaratory judgment prayed for. Phillips might well have brought an action for a declaratory judgment separately and prior to the complaint in this case. *Cf. Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 185–86, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952).[5] Moreover, a prayer for a declaratory judgment seeks, as relief, only a declaration of rights, whether or not other relief also is (or could be) sought. *See* 28 U.S.C. § 2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Samuel Goldwyn, Inc. v. United Artists Corp.*, 113 F.2d 703, 707 (3d Cir.1940); E. Borchard, *Declaratory Judgments*, Ch. II at 25–26 (2d ed. 1941); *see also Powell v. McCormack*, 395 U.S. 486, 498–99, 89 S.Ct. 1944, 1951–52, 23 L.Ed.2d 491 (1969). Likewise, as conceded by Phillips (D.I. 321 at 1–2), DuPont's claim for patent infringement is cognizable and seeks damages, an injunction, and a declar-

---

**5.** Of course, there can be no action here without a case or controversy. U.S. Const. art. III. That, however, is not challenged here; and, in fact, Phillips' allegations are that there is.

atory judgment. Therefore, the Court concludes that there are at least two individual cognizable claims for relief in this action, the counterclaim at issue and DuPont's claim for infringement. *See also* 6 J. Moore, *Moore's Federal Practice,* ¶ 53.35 at 54–225 to 226 (1989).

The question, then, is whether this Court's ruling was an "ultimate decision" on the counterclaim. The Court concludes that it was. The only relief sought by Phillips on the counterclaim was a declaratory judgment on the liability issues. Pursuant to the stipulation by the parties, those issues have been completely tried and decided, and the Court's findings and conclusions on them will not be altered or subject to contest when (and if) the issues of damages on the infringement claim are tried and decided. Therefore, the Court's ruling was an "ultimate decision" on the counterclaim.

In arguing to the contrary, Phillips states that "the antithesis of a final order is ... [one] disposing of liability issues but leaving damages for later resolution," and quotes the following from *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976):

> Such judgments are by their terms interlocutory ... and where assessment of damages or awarding of other relief remains to be resolved have never been considered "final" within the meaning of 28 U.S.C. § 1291.

(D.I. 321 at 5.) However, the Court need not immediately address whether its ruling in this case was an "ultimate decision" on the infringement claim. As concluded, *supra,* the counterclaim is an individual cognizable claim for relief, and *Liberty Mutual* does not require a different conclusion. That case involved a single claim where the relief sought was a declaratory judgment as well as an injunction, damages and attorney's fees. It was argued that summary judgment on the issue of liability was really a declaratory judgment on that issue

and was therefore final. The Supreme Court stated:

> Had respondents sought *only* a declaratory judgment, and no other form of relief, we would of course have a different case. But even if we accept respondents' contention that the District Court order was a declaratory judgment on the issue of liability, it nonetheless left unresolved respondents' requests for an injunction, for compensatory and exemplary damages, and for attorney's fees. It finally disposed of none of respondents' prayers for relief.

*Id.* at 742, 96 S.Ct. at 1206 (emphasis in original).

Certainly, Rule 54(b) does not permit appellate jurisdiction over a decision that is not "final." *See Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900–01, 100 L.Ed. 1297 (1956); *Chaparral Communications, Inc. v. Boman Indus., Inc.,* 798 F.2d 456, 457 (Fed.Cir.1986); *see also Bergman v. City of Atlantic City,* 860 F.2d 560, 564 n. 5 (3d Cir.1988); *Shirey v. Bensalem Township,* 663 F.2d 472, 474 (3d Cir.1981).[6] But that the counterclaim here may arise from the "same transaction or occurrence" as the claim for infringement does not, *ipso facto,* taint the finality of the Court's decision with respect to the counterclaim. *See Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 452, 76 S.Ct. 904, 908–09, 100 L.Ed. 1311 (1956); *H & W Indus., Inc. v. Formosa Plastics Corp.,* 860 F.2d 172, 175 (5th Cir.1988); *Local P–171 Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.,* 642 F.2d 1065, 1070 (7th Cir.1981). *See also Sears,* 351 U.S. at 436, 76 S.Ct. at 900. Here, to the extent the counterclaim and the infringement claim are interrelated, the common issues, both factual and legal, have been fully litigated. What remains to be litigated and decided does not bear on the finality of the decision with respect to

---

6. 28 U.S.C. § 1295(a)(1) grants the Federal Circuit exclusive jurisdiction (with certain exceptions) "of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title...." *See also Woodard v. Sage Products, Inc.,* 818 F.2d 841, 844 (Fed.Cir.1987); *Veach v. Vinyl Improvement Products Co.,* 700 F.2d 1390, 1390–91 (Fed.Cir.1983).

the liability issues or the counterclaim. Therefore, while the relationship between the claims bears on whether there is no just reason for delay, *infra, see Cold Metal Process,* 351 U.S. at 452, 76 S.Ct. at 908–09; *Sears,* 351 U.S. at 436, 76 S.Ct. at 900; it does not, in this case,[7] bear on the finality of the Court's decision on the counterclaim.

Having thus concluded that there has been an ultimate decision on the counterclaim and that the counterclaim is one of multiple cognizable claims for relief, the next question is whether there is no just reason to delay an appeal. In addressing this question, the Court must exercise its discretion taking "into account judicial administrative interests as well as the equities involved." *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. Factors bearing on this inquiry include "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (footnote omitted). While the presence of one of these would not itself make certification improper, it would require a finding of a counterbalancing and sufficiently important reason for nonetheless granting certification. *See id.* at n. 2.

Whether there is no just reason to delay an appeal of the counterclaim in this case, and the arguments made on the issue by the parties, raise two fundamental questions of judicial administrative policy. The first is whether, at this point in this case, the possibility of a forthcoming decision by the Patent Office is a just reason to delay an otherwise provident grant of certification. The second is whether granting entry of a final judgment on the counterclaim would, in Phillips' words, "contravene the statutory policy permitting the losing party to decide when to appeal a patent liability ruling." The Court turns to consider these questions first.

As noted, *supra,* Phillips contends that the Patent Office is on the verge of a binding decision in the proceedings there, and that an examiner has in fact rejected the claims at issue here as unpatentable. Therefore, Phillips' argument goes, this is a just reason for delay of an appeal because a decision of the agency finding the claims unpatentable would moot this Court's judgment.

In *In re Etter,* 756 F.2d 852 (Fed.Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985), the Federal Circuit addressed, *en banc,* the question of whether the provisions of 35 U.S.C. § 282—which provides that issued patents are presumed valid—were applicable to consideration by the Patent Office of claims in reexamination proceedings.[8] In deciding that they

---

7. The Court need not pass on whether an affirmative defense merely couched as a counterclaim is an individual cognizable claim for relief for purposes of Rule 54(b). *See* 6 J. Moore, *Moore's Federal Practice,* ¶ 54.35 at 54–226 (1989). Therefore, the cases cited by Phillips involving such facts, *see, e.g., Flynn & Emrich Co. v. Greenwood,* 242 F.2d 737 (4th Cir.), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957); *Carter v. Croswell,* 323 F.2d 696 (5th Cir.1963), *withdrawn,* 325 F.2d 431 (5th Cir.1964), are inapposite and the Court need not address the reasoning therein.

8. 35 U.S.C. § 282 provides:

A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.

The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

(1) Noninfringement, absence of liability for infringement or unenforceability,

(2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,

(3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,

(4) Any other fact or act made a defense by this title.

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and

were not, the court determined that it was intended by Congress "that reexamination proceedings and court actions involving challenges to validity be distinct and independent," and that parties had a "legal right" to contest the validity of a patent in a court proceeding whether or not the Patent Office could be convinced to reexamine it. *Id.* at 857. The court went on to state that litigation and reexamination were "distinct proceedings, with distinct parties, purposes, procedures, and outcomes." *Id.* at 857–58. With respect to the patentees interest, the court said that:

> The essence of all property is the right to exclude, and the patent property right is certainly not inconsequential. It is, nonetheless, created by a grant from the government. When a "substantial question" exists respecting the correctness of that grant, it does not conflict but coincides with the nature of the grantee's right when the government reexamines the propriety of the grant it has made, and thereafter reaffirms the grant, substitutes a new grant (amended or new claims), or withdraws the grant in whole or in part (the last being subject to review in this court).

*Id.* at 859.

More recently, the *Ethicon* case was decided. 849 F.2d 1422. There, the patentee had brought two separate suits for infringement of the same patent in two U.S. district courts. The first was brought in 1981 against three parties. The second was brought in 1986 against Ethicon. The first suit was tried in September of 1987, and was awaiting decision.

In March of 1987, before a decision in the first suit, Ethicon ran into the Patent Office and requested reexamination of the patent. The next day, Ethicon requested the district court to stay the infringement litigation pending resolution of the reexamination. The district court denied the stay.

The Patent Office granted the reexamination in May of 1987, and Ethicon asked the district court to reconsider its decision not to stay. Again, the district court denied a stay as premature, because there had not been a final determination in the reexamination.

In September of 1987, the patentee petitioned the Patent Office to stay its proceedings, pursuant to 37 C.F.R. 1.565 and § 2286 of The Manual of Patent Examining Procedure ("MPEP"),[9] and in deference to the infringement litigation awaiting a decision. The Patent Office denied the petition as untimely, but nevertheless stayed its proceedings relying on § 2286 of the MPEP which provided in pertinent part:

> If reexamination is ordered the reexamination will continue until the [patent and Trademark] Office becomes aware that a trial on the merits has begun at which time the reexamination proceeding normally will be stayed, *sua sponte* by the examining group director unless a proper petition to stay has been filed which is not rendered moot by the *sua sponte* stay.

Ethicon then filed an action in district court against the Commissioner to enjoin delay of the Patent Office proceedings as unlawful and contrary to the reexamination statute. The district court held for the

page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Claims Court, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires. Invalidity of the extension of a patent term or any portion thereof under section 156 of this title because of the material failure—

(1) by the applicant for the extension, or

(2) by the Commissioner,

to comply with the requirements of such section shall be a defense in any action involving the infringement of a patent during the period of the extension of its term and shall be pleaded. A due diligence determination under section 156(d)(2) is not subject to review in such an action.

9. The MPEP provides that "it is a reference work on patent practices and procedures and does not have the force of law." *See Ethicon,* 849 F.2d at 1425. But it has been held that the public can rely on these procedures. *See Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 606 (Fed.Cir. 1985).

Commissioner. On appeal to the Federal Circuit, Ethicon argued that the Commissioner had no authority to stay reexamination pending the outcome of district court litigation.

The Federal Circuit agreed with Ethicon. 35 U.S.C. § 305 provides that:

> All reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office.

Essentially, the court decided that the "special dispatch" language, together with the legislative history, showed that Congress intended "unique, extraordinary, or accelerated movement" of reexamination proceedings, and that reexamination provided "an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the [Patent Office] expertise." *Ethicon*, 849 F.2d at 1426. As such, the court held, the statute did not contemplate that a reexamination be suspended pending the outcome of a district court case involving allegations of invalidity of the same patent. The court went on to state:

> Courts have inherent power to manage their dockets and stay proceedings ..., including the authority to order a stay pending conclusion of a ... [Patent Office] reexamination.... The Commissioner, on the other hand, has no inherent authority, only that which Congress gives. It did not give him authority to stay reexaminations; it told him to conduct them with special dispatch.

*Id.* at 1426–27 (citations omitted).[10]

The Federal Circuit dismissed the notion—relied on by the district court—that

one of the purposes of the reexamination legislation was to avoid duplication of efforts by the courts and the Patent Office. First, the court noted, the Patent Office's expertise "does not exist elsewhere." *Id.* at 1427. Second, there is not "precise duplication of effort" because there are different standards of proof for validity in the Patent Office and the courts, and the courts are not limited to prior art patents or printed publications as grounds for invalidity. *Id.*[11] "Suspension of ... [Patent Office] proceedings does not prevent duplication; it precludes access to the forum where there is no presumption of validity." *Id.* The inequity of a stay, the court noted, was illustrated by the fact that the Patent Office proceedings could have been stayed since 1981 because of the first suit and Ethicon could not have done anything about it, though Ethicon was not involved in that litigation. *Id.*[12]

The Commissioner advanced four arguments that the provision in the MPEP at issue was "reasonably related" to the reexamination statute. First, it would waste Patent Office resources to continue a reexamination where a trial on the validity of the same patent had begun. Second, a court's decision after trial would generally be based on a more complete record, because of the availability of live testimony and cross-examination. Third, a decision on validity from the Patent Office prior to a decision by a court, which had not stayed its litigation pending the Patent Office proceedings, may unnecessarily complicate the litigation. And, fourth, staying the Patent Office proceedings would avoid the awkwardness of decisions by the Patent Office and courts reaching different conclusions as to validity.

---

10. In *Joy Mfg. Co. v. National Mine Service Co.,* 810 F.2d 1127 (Fed.Cir.1987) (decided by a panel consisting of Chief Judge Markey and Judges Nies and Newman), Judge Newman, concurring in part and dissenting in part, wrote that "[t]he general practice, when a party to litigation proposes that a patent be reexamined, is that the trial court's authorization is sought, including stay of the litigation pending completion of the reexamination, since the ... [Patent Office] will not reexamine patents that are before a court." *Id.* at 1132 (citing MPEP § 2286). This, of course, was before *Ethicon.*

11. Of course, reissue can take up different issues. *See Etter,* 756 F.2d at 857 n. 4.

12. It is noteworthy, however, that Ethicon had not, in fact, sought to have the patent reexamined during the period after 1981 in which the Patent Office proceedings could have been stayed. Rather, it (like Phillips) waited until it had been sued for infringement. The patent in *Ethicon* issued in 1970. *See Ethicon,* 849 F.2d at 1423.

The Federal Circuit was persuaded by none of these. The first, it found, was essentially the same as the "duplication of efforts" argument, and likewise without merit. The second it found to be similarly flawed because the argument ignored the advantages of reexamination, namely, that the patentee and public have an equal interest in the maintenance of valid patents and that reexamination is likely to be "cheaper."

With respect to the third and fourth arguments, the Federal Circuit stated that these overlooked the fact that challenging validity in a court and requesting a reexamination in the Patent Office were "concepts not in conflict." *Id.* at 1428 (citing *Etter*, 756 F.2d at 857). Further, the court stated: "[S]uspension prevents the simplification of litigation that might result from the cancellation, clarification, or limitations of claims, and, even if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court ... which it could consider in reaching its determination." *Ethicon*, 849 F.2d at 1428.

More with respect to the fourth argument, the Federal Circuit stated:

The awkwardness presumed to result if the ... [Patent Office] and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions. Furthermore, we see nothing untoward about the ... [Patent Office] upholding the validity of a reexamined patent which the district court later finds invalid. This is essentially what occurs when a court finds a patent invalid after the ... [Patent Office] has granted it. Once again, it is important that the district court and the ... [Patent Office] can consider different evidence. Accordingly, different results between the two forums may be entirely reasonable. And, if the district court determines a patent is not invalid, the ... [Patent Office] should continue its reexamination because, of course, the two forums have

different standards of proof for determining invalidity.

*Id.* at 1428–29 (citations and footnote omitted). The court went on, that to the extent § 2286 of the MPEP stated that the Patent Office was bound by a court's decision upholding a patent's validity, it was incorrect. *Id.* at 1429. "On the other hand, if a court finds a patent invalid, and that decision is either upheld on appeal or not appealed, the ... [Patent Office] may discontinue its reexamination." *Id.* While the question of whether a party has had the chance to fully and fairly litigate the validity of its patent is in the end for a court, the Federal Circuit stated that the Patent Office could act on the standing judgment of invalidity unless and until a court has said it does not have *res judicata* effect. *Id.*

For this Court's purpose here, there are at least two principles recognized by the Federal Circuit. On one hand, pains are endured to make clear that the Patent Office proceedings and those here are "distinct" and "independent." *See also Joy Mfg. Co. v. National Mine Service Co.*, 810 F.2d 1127, 1130 (Fed.Cir.1987). Moreover, a patentee is, here, entitled to a presumption that it holds a valid patent, and to a remedy for proven infringement of it. *See also* 35 U.S.C. §§ 281, 282.

On the other hand, there is a view that the Patent Office's proceedings may be used by a court as a facility for its own litigation. It is at least implied that even if district court litigation cannot be completely resolved in a Patent Office proceeding (which it is suggested is the "cheaper" way to go for certain allegations of invalidity), all involved will be benefited by the Patent Office's "expert" crack at it. *See also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). *See also Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601–02 (Fed.Cir.1985). The Federal Circuit notes that this Court inherently has the device of a stay—a device "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165–66, 81 L.Ed. 153

(1937)—to manage a case so as to avail itself of a Patent Office proceeding. This nearly suggests comity.[13]

However workable the latter really is,[14] this Court concludes that, at this time, the former outweighs the latter in this case. That is, the distinction and independence of the respective proceedings, and the presumption of validity and a patentee's right to a remedy for infringement, override the consideration that a decision by the Patent Office *may* be forthcoming and that such a decision *may* be useful to, or dispose of this litigation.

The Federal Circuit has made clear that a reexamination is to, essentially, start over and to determine whether the government should not have granted the right it did in the first place to the patentee.[15] Moreover, *anyone* can request reexamination of a patent at *any time*. In fact, in this case Phillips did not request reexamination until 4 years after it was sued by DuPont for infringement. But unless and until the Patent Office decides that it originally erred, the patent's validity is presumed and the patentee is entitled to a remedy here for its infringement. On the other hand, a decision by the Patent Office would be of limited, if any, utility to the Court at this point in time, since the liability issues (including the validity of the patent) have been completely litigated. Therefore, the Court concludes that, in the circumstances of this case, where there has been no decree by the government that it erred, initially, in issuing the '698 patent, and where the liability issues have been completely decided here, it is not a just reason to delay an otherwise provident certification for appeal that the government *may* decide that issuing the '698 patent was, to some extent, error.

The next question is whether granting entry of a final judgment on the counterclaim would "contravene the statutory policy permitting the losing party to decide when to appeal a patent liability ruling." As noted *supra*, in this case the liability issues have been completely decided. In fact, the Court's judgment is appealable now on the infringement claim. 28 U.S.C. § 1292(c)(2). Phillips has, in this way, once appealed, leading to the present remand. Even so, Phillips argues, it is its "option" to appeal or not at this point. It chose, this time, to await the outcome of the damages proceeding.

28 U.S.C. § 1292(c)(2) gives the Federal Circuit exclusive jurisdiction "of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable ... and is final except for an accounting." This is an exception to the general rule against the appealability of interlocutory orders, and was enacted "in response to the expense frequently involved in accounting in patent suits and the losses incurred when recoveries were ultimately denied by reversal of decrees on the merits." *Majorette Toys (U.S.), Inc. v.*

---

**13.** *But cf.* H.R.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), *reprinted in,* U.S. Cong. & Admin. News 1980, at 6460, 6463 ("It is anticipated that these measures provide a useful and necessary *alternative* for challengers and for patent owners to test the validity of ... patents in an efficient and relatively inexpensive manner.") (emphasis added); *Joy,* 810 F.2d at 1132 (Newman, J., concurring in part, dissenting in part) ("The reexamination statute is often described as an alternative to litigation ..., not a postscript to it.").

**14.** This Court is compelled to note what was not expressly considered by the Federal Circuit in *Ethicon.* That district court dockets are already full, and district judges manage these patent cases from beginning to end, from filing suit through final judgment. Certainly, a well timed decision by the Patent Office on a patent in suit in a district court may cheaply dispose of the

suit before the parties or the court have expended time and resources. Or it may provide valuable *insight on the contents of a patent.* But, apparently, nothing in the law now requires an infringement defendant to request reexamination, if at all, at a convenient time, or at any time for that matter. Therefore, a district court's authority to stay its own proceedings is *not a sufficient solution to economical cooperation* of the two forums. Nor, in this Court's view, is it prudent as a practice considering the congressional provision of a remedy in U.S. courts for redress to a patentee for infringement. *See* 35 U.S.C. § 281.

**15.** Also, while reissue and reexamination are technically distinct, the focus of both is to cure defects which occurred during a proceeding in the Patent Office issuing the patent. *Etter,* 756 F.2d at 858.

*Darda, Inc. U.S.A.,* 798 F.2d 1390, 1391 (Fed.Cir.1986). Speaking of the predecessor statute to § 1292(c)(2), the Supreme Court said that its purpose

> was to make sure that parties could take appeals in patent equity infringement suits without being compelled to await a final accounting. The reports of Congressional committees on the measure called attention to the large expenses frequently involved in such accountings and the losses incurred where recoveries were ultimately denied by reversal of decrees on the merits.
>
> \*  \*  \*  \*  \*  \*
>
> The House Committee on Patents expressed the belief that the legislation "is needed to prevent a great burden of expense of litigants in actions to determine the validity of patents, where an accounting is involved. Under present procedure appeals may be taken from the interlocutory decree upholding the patent but not until a full accounting has been made to the court. Under this bill such appeal can be taken from such interlocutory decree ... so as to obviate the cost of an accounting in the event the case is reversed on appeal." H.R.Rep. No. 1890, 69th Cong., 2 Sess. 1 (1927).

*McCullough v. Kammerer Corp.,* 331 U.S. 96, 98 & n. 1, 67 S.Ct. 1165, 1167 n. 1, 91 L.Ed. 1365 (1947); *see also In re Calmar, Inc.,* 854 F.2d 461, 464 (Fed.Cir.1988).

The words of § 1292(c)(2) do not compel a party to appeal a decision covered by it. Its words are permissive. So in one sense, Phillips indeed has "the option" to appeal the Court's judgment on the infringement claim.

But, the question here is not whether Phillips was or was not required to appeal. Rather the question is whether entry of a final judgment on the counterclaim would run afoul of a policy underlying the provision which permits appeal of decision on infringement claims which are final except for an accounting. The Court concludes that it would not. The policies outlined above are to save expense and waste to all parties as well as the Court, not just a "losing" party. Ordinarily, there would be no reason for a losing party to put off such an appeal, and in fact Phillips once appealed such a decision in this case. Moreover, Phillips concurs with DuPont that discovery and related matters in the "damages" portion of this case will require considerable more time and expense to the parties. No doubt they will likewise require substantial resources of the Court. Therefore, the Court concludes that granting entry of a final judgment on the counterclaim will not run afoul of the policy underlying § 1292(c)(2); it will further it.[16]

Therefore, the Court moves on to the more general inquiry regarding the judicial administrative interest, and whether appeal here will offend the Federal policy against piecemeal appeals. It cannot be contended that the basis, factual and legal, for this Court's decision on the counterclaim and the liability issues is not the same. Yet the common underpinnings have been completely litigated and determined, and the Court's findings and conclusions will not be at issue or subject to alteration or contest during the remaining litigation on the damages issues.[17] Therefore, the Court concludes that the counterclaim is, in this sense, separable from what is left to be adjudicated on the infringement claim. In any event, the overlap or interrelationship of the claims does not pose a just reason for delay, because what has been finally

---

**16.** *Cf. Local P–171,* 642 F.2d at 1071 (Rule 54(b) and 28 U.S.C. § 1292(b) have identical primary purposes, to accelerate appellate review of select portions of a litigation).

**17.** *Cf. Cullen v. Margiotta,* 811 F.2d 698, 712–13 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) ("The issues that remain[ed] to be litigated, *i.e.,* the remedies to which the plaintiffs are entitled, have no bearing on the liability issues [already] decided....."

\*  \*  \* "The adjudication of these claims was undoubtedly as final as it was ever likely to be, absent appellate modification. The remedy proceedings to be conducted in the district court with respect to the ... [other claims] had no apparent potential for affecting either the district court's ... [disposition of the adjudicated claims] or ... [appellate review] of that ... [disposition].").

**387**

litigated is not intertwined with what has yet to be.[18]

Similarly, the interrelationship of the counterclaim and infringement claim will not require an appellate court to consider the same issues on a subsequent appeal.[19] The liability issues were completely decided, and, as noted, are not entangled in what has yet to be litigated. The preclusive effect of an appellate disposition of the counterclaim will negate the danger of subsequent appellate consideration of the same issues. Therefore, there is no just reason for delay for this reason either.

Lastly, the equities must be considered. Here they fall easily in favor of certification. On one hand, neither party will suffer undue hardship in an appeal now. Phillips has once demonstrated its willingness to appeal before damages have been passed on. Perhaps an appellate disposition of the liability issues will encourage settlement of this case. On the other hand, however, the time and expense to complete this entire litigation will be considerable, and will be at risk that the Federal Circuit will alter the decision on liability. Phillips itself concurs on this point. Its only reason, stated or not, for delay is the chance that the Patent Office will render a decision on the patent in suit which may be more favorable (to Phillips) than this Court's own. Of course, the Court recognizes that DuPont's interest in seeking appellate review now is no less tactical. But, unfortunately for Phillips, the Court concludes that, based on all of the facts here and for the foregoing reasons, there is no just reason to delay an appeal of the counterclaim.

In accordance with the foregoing, the Court will direct entry of a final judgment on Phillips' counterclaim for a declaratory judgment pursuant to Fed.R.Civ.P. 54(b). The order will enter final judgment in favor of DuPont and against Phillips on Phillips' counterclaim.

---

**18.** To the extent a decision by the Patent Office would require action by or the attention of this Court, this tends to support certification now. If, instead of certification, we proceed with damages, there is a danger that time and resources there expended would be wasted or misdirected.

**19.** The Court is not persuaded by Phillips' argument that the preclusive effect of an appellate disposition of the counterclaim proves that there is, really, only one claim here. The Supreme Court has clearly decided that is not so. *See supra.*